Argued and submitted February 7, ballot title certified as modified March 6, 1990

SAMPSON et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(SC S36764)

788 P2d 421

Charles F. Hinkle, Portland, argued the cause for petitioners. With him on the petition was Sandra Childs, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the answering memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, J.

## CARSON, J.

In this original proceeding, petitioners[1] challenge a ballot title certified by the Attorney General for a measure which would prohibit a person from performing an abortion on an unemancipated minor without prior written notice to her parents. We review the ballot title for "substantial compliance" with the requirements of ORS 250.035 and 250.039. ORS 250.085(4). Those requirements generally are that the title include: (1) a caption of not more than 10 words which "reasonably identifies" the subject of the measure; (2) a question of not more than 20 words which "plainly phrases the chief purpose of the measure"; and (3) a "concise and impartial" statement of not more than 85 words "summarizing the measure and its major effect." Petitioners have complied with the requirements of ORS 250.085, which sets forth the procedure for challenging a ballot title, and thus are properly before us.

The Attorney General certified the following ballot title to the Secretary of State:

"PROHIBITS MINOR'S ABORTION
WITHOUT DOCTOR'S PRIOR
WRITTEN NOTICE TO PARENTS

"*QUESTION:* Shall law prohibit abortions on unemancipated minors unless doctor gives 48 hours prior written notice to parent(s), guardian or conservator?

"*EXPLANATION:* Prohibits abortion on unemancipated minor without written notice from doctor to parent(s), guardian, or conservator, delivered at least 48 hours before abortion. Notice excused if parents certify receipt of notice, or doctor certifies minor's life is endangered or reports minor is victim of sexual or physical abuse or neglect. Violators shall be fined at least $1,000 and civilly liable to persons not notified for at least $1,000, plus punitive damages for knowing violation. No

---

[1] Petitioners all are individuals, with the following affiliations: Petitioner Sampson is Executive Director of the Oregon affiliate of the National Abortion Rights Action League. Petitioner Kaliher is Staff Coordinator of the Oregon affiliate of the Religious Coalition for Abortion Rights. Petitioner Federico is State Coordinator for the Oregon Chapter of the National Organization for Women. Petitioners Stein and Bauman are members of the Oregon House of Representatives and of Lawyers for Choice. Petitioner Remington is Executive Director of the ACLU of Oregon. Petitioner Stickney is Executive Director of Planned Parenthood of the Columbia/Willamette.

liability if violator proves with writing reasonable reliance on minor's representations."

## THE CAPTION

Petitioners do not challenge the Caption certified by the Attorney General.

## THE QUESTION

■ Petitioners argue that voters who read the Question may believe that the measure will require notice to the parents of both the male and female responsible for the pregnancy. Petitioners argue that because the measure does not provide for notice to the male, the word " 'her' should therefore be added to the Question, to make it clear that this measure will do nothing to ensure notice to the parents of the male party to the event." The Attorney General recognizes the validity of petitioners' concerns and has suggested two alternative Questions.

We agree that petitioners' concerns are valid. Accordingly, the Question is modified to read as follows:[2]

*QUESTION:* Shall law prohibit unemancipated minor's abortion unless doctor gives 48 hours prior written notice to her parent(s), guardian, or conservator?

## THE SUMMARY

Petitioners challenge six aspects of the Summary. Petitioners first argue that, to avoid ambiguity about to whom notice must be given, the word "her" should be added to the first sentence of the Summary. For the reason stated above in our discussion of the Question, we agree.

■ Petitioners next argue that "one of the major effects of this measure will be to open the door for the state to intrude into the decision to use many kinds of contraceptives, not just into the decision to have an 'abortion' as that term is presently used and understood." This follows, petitioners argue, from the measure's definition of abortion to include causing the

---

[2] Petitioners also argue that the reference to "48 hours" is misleading, because the measure allows for a form of delivery that would require notice to be *sent* up to four days before the abortion. However, the measure requires that notice be "delivered" at least 48 hours before an abortion is performed. The Attorney General's language is clear and it "plainly phrases the chief purpose of the measure."

death of a fetus, which is any "individual human organism from fertilization until birth." This definition, according to petitioners, serves to "redefine" abortion to include use of certain contraceptives.[3]

The measure's definition of "fetus," the killing of which is an "abortion" under the measure, *is* broad. As the Attorney General points out, however, neither "fetus" nor "abortion" currently is defined under Oregon law. Thus, although the measure includes a broad definition of "fetus" *for purposes of this measure,* it does not "redefine" any legally significant term.[4] Further, we agree with the Attorney General that "[i]f the measure is enacted in its current form, this court ultimately may be required to decide whether its terms regulate some forms of contraception. It would be inappropriate for the ballot title to suggest those answers, however."

It is, on the other hand, appropriate to apprise voters of the impact of a measure's definition of a key term. Notwithstanding our refusal to enter into the debate about whether certain forms of contraception constitute abortion under this measure, we believe that petitioners' concerns are valid on this point. The purpose of this measure is to require notice to an unemancipated minor female's parents prior to the performance of an abortion. Defining the range of medical procedures which requires notice is an integral part of the measure. The Summary must "be worded so that voters will understand the *breadth of its impact." Fred Meyer, Inc. v. Roberts,* 308 Or 169, 175, 777 P2d 406 (1989). (Emphasis added.) Accordingly, the Summary must refer to the measure's definition of abortion.

Petitioners next take issue with the phrase "[n]otice excused if parents certify receipt of notice," arguing that the phrase is "singularly uninforming, and voters are going to wonder what in the world it means." Petitioners also assert that the use of the word "certify" could be misread to include oral certification, contrary to the specific terms of the measure.

---

[3] Petitioners refer specifically to the intrauterine device and certain "low-dose" oral contraceptives.

[4] The Attorney General notes that similar definitions are equally broad. For example, ORS 432.005(4) defines "fetal death" as "death prior to the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy."

The Attorney General agrees that the phrase "may not capture the measure's requirement as clearly as would ideally be wished, and might actually be misleading." The Attorney General suggests, and we adopt, the following phrase: "Notice excused with parents' written waiver." The alternative language meets petitioners' additional objection by making clear that the waiver is to be in writing.

Petitioners' fifth concern is that reference to "violator" in the last sentence of the Summary is inaccurate and contradictory because, they argue, the measure provides that there is no violation if a person who is required to give notice establishes by written evidence that the person reasonably relied on certain representations of the unemancipated minor. In fact, the measure provides that a "person shall not be held liable" under such circumstances. Accordingly, the Attorney General's language substantially complies with the requirement that the Summary concisely and impartially summarize the measure.

Petitioners' final argument is that the last sentence of the Summary, by including the words "with writing," is "inaccurate and confusing, because it seems to imply that a 'violator' can escape liability if he or she can prove with his or her *own* writing (that is, a sworn affidavit or the like) that he or she acted with reasonable reliance." (Emphasis in original.) The measure itself provides that a person, to escape liability, must establish reasonable reliance "by written evidence."

■ Regardless of the correctness of petitioners' interpretation of those words, we agree that the measure's words ("by written evidence") should be used. In general—and absent a compelling reason to the contrary—the Attorney General should use the actual language of the measure in the Summary. *See Glerum v. Roberts,* 308 Or 22, 27, 774 P2d 1093 (1989).

In summary, we certify the following ballot title to the Secretary of State:

## PROHIBITS MINOR'S ABORTION WITHOUT DOCTOR'S PRIOR WRITTEN NOTICE TO PARENTS

*QUESTION:* Shall law prohibit unemancipated minor's abortion unless doctor gives 48 hours prior written notice to her parent(s), guardian, or conservator?

*SUMMARY:* Prohibits abortion on unemancipated minor without written notice from doctor to her parent(s), guardian, or conservator, delivered at least 48 hours before abortion. Notice excused with parents' written waiver, or if doctor certifies minor's life is endangered or reports minor is victim of sexual or physical abuse or neglect. Defines abortion as causing death of human organism from fertilization until birth. Violators fined and civilly liable, including punitive damages for knowing violation. No liability if violator proves by written evidence reasonable reliance on minor's representations.

Ballot title certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of the date of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.