Argued and submitted February 13, ballot title certified as modified March 27, reconsideration denied April 18, 1990

# AUGHENBAUGH,
*Petitioner,*

*v.*

# ROBERTS,
*Respondent.*

## (SC S36843)

789 P2d 656

Paul R. Romain, of Preston, Thorgrimson, Shidler, Gates & Ellis, Portland, argued the cause and filed the petition for petitioner.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the Answering Memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

Fadeley, J., filed a specially concurring opinion in which Van Hoomissen, J., joined.

## UNIS, J.

In this original proceeding, petitioner challenges a revised ballot title certified by the Attorney General to the Secretary of State. We review the ballot title for "substantial compliance" with the requirements of ORS 250.035[1] and 250.039.[2] ORS 250.085(4). Pursuant to ORS 250.067(1), petitioner filed with the Secretary of State timely written comments concerning the Attorney General's original certified ballot title. Petitioner is, therefore, entitled to bring this proceeding. ORS 250.085(2) and (5). We modify the challenged ballot title.

The Attorney General certified the following ballot title to the Secretary of State:

"INCREASES BEER, LIQUOR TAXES TO FUND ALCOHOLISM AND DRUG PROGRAMS

"*QUESTION:*  Shall beer and liquor taxes be increased and dedicated to fund state and county alcoholism and drug services programs?

"[*SUMMARY*]:  Increases beer tax from $2.60 to $6.60 per barrel, alcoholic beverages tax from 65¢ to 90¢ per gallon. Annual increases for inflation. Retail liquor price must be at least 115% of wholesale cost. Alcohol taxes dedicated to chemical dependency programs. $25 million of taxes go biennially to build $250 million Alcoholism and Drug Services Trust Fund. Remainder plus trust fund interest goes to Alcoholism and Drug Services Fund. Fund distributes 60% to state, 40% to counties."

This court's role in reviewing a ballot title and the

---

[1] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a)  A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b)  A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c)  A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

[2] Under ORS 250.039, a ballot title must comply with a readability standard set by the Secretary of State "to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy." *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). Petitioner does not challenge the ballot title's compliance with ORS 250.039.

standards that we apply in doing so have been stated numerous times by this court. *See, e.g., Nelson v. Roberts,* 309 Or 499, 789 P2d 650 (1990). We will not, therefore, restate them in this opinion, except as may be necessary in our discussion of the issues raised by petitioner.

Petitioner claims that the ballot title is deficient in three respects. He contends that (1) the tax increases listed are neither accurate nor complete; (2) the statement that "[r]etail liquor price must be at least 115% of wholesale cost" is inaccurate, incomplete and misleading; and (3) the ballot title fails to mention the initiative measure's major effect, which petitioner asserts is "to take alcoholic beverage tax money outside of the state's general fund and dedicate those funds to particular listed purposes."

Petitioner proposes the following ballot title:

"INCREASES ALCOHOL TAXES,
FUNDS CHEMICAL DEPENDENCY PROGRAMS
OUTSIDE GENERAL FUND

"*QUESTION:*   Shall alcohol taxes be increased to fund state and county chemical dependency programs outside of the state's general fund?

"[*SUMMARY*]:   Increases beer barrelage tax from $2.60 to $6.60, wine gallonage tax from 67¢ to 92¢, fortified wine gallonage tax from 77¢ to $1.02. Increases taxes yearly for inflation. Distilled spirits retail price mark-up at least 115% over wholesale, plus state administration expenses. Removes alcohol taxes from the state's general fund. Creates $250 million Alcoholism and Drug Services Trust Fund. Interest on Fund plus most alcohol tax money goes to state and counties for chemical dependency programs. Some money goes unrestricted to cities and counties."

The parties agree that the proposed initiative measure would increase the tax on "alcoholic beverages" and "malt beverages," as those terms are defined in ORS 473.010(1) and (3). The parties agree that "beer" is an appropriate shorthand description of "malt beverages."[3] They also agree that "alco-

---

[3] We agree with the parties that the word "beer" is more meaningful to the voters than the statutory phrase "malt beverages." We have, therefore, employed the word "beer" in lieu of "malt beverages" throughout the ballot title we certify as modified.

holic beverages," under ORS 473.010(1),[4] *generally* has reference to "wine," which contains more than one-half of one percent of alcohol by volume and not more than 14 percent of alcohol, and "fortified wine," which contains more than 14 percent of alcohol by volume and not more than 21 percent of alcohol by volume. *See* ORS 473.010(1); ORS 473.030(2), (3) and (4).[5] Moreover, petitioner and respondent agree that the proposed measure, if approved by Oregon voters, would increase the tax on beer from $2.60 to $6.60 per barrel, as the Summary states. *See* ORS 473.030(1) and Section 2(1) of the measure.

■    Petitioner's first disagreement with the Attorney General's ballot title is with the language in its Summary that states that the measure "[i]ncreases * * * alcoholic beverages tax from 65¢ to 90¢ per gallon." Petitioner also disagrees with respondent's suggestion that that language be amended to read "[i]ncreases * * * base wine tax from 65¢ to 90¢ per gallon." Neither the language in the Summary nor that suggested by respondent is accurate, petitioner argues, because no "alcoholic beverage" is presently taxed at 65¢ per gallon, and under the proposed measure no "alcoholic beverage" would be taxed at 90¢ per gallon. We agree.

As noted previously, under ORS 473.010(1), "alcoholic beverages" includes both "wine" and "fortified wine."

---

[4] ORS 473.010(1) provides:

"'Alcoholic beverages' means and includes any fortified wine or similar fermented vinous liquor and fruit juice, or other fermented beverage fit for beverage purposes, containing more than one-half of one percent of alcohol by volume and not more than 21 percent of alcohol by volume."

[5] ORS 473.030 provides in part:

"* * * * *

"(2)  A tax hereby is imposed upon the privilege of engaging in business as a manufacturer or as an importing distributor of alcoholic beverages at the rate of 65 cents per gallon on all such beverages.

"(3)  In addition to the tax imposed by subsection (2) of this section, alcoholic beverages containing more than 14 percent of alcohol by volume and not more than 21 percent of alcohol by volume shall be taxed at 10 cents per gallon.

"(4)  In addition to the taxes imposed by subsections (2) and (3) of this section, alcoholic beverages containing not more than 21 percent of alcohol by volume shall be taxed an additional two cents per gallon. Notwithstanding any other provision of law, all moneys collected by the commission pursuant to this subsection shall be paid into the Wine Advisory Board Account established under ORS 576.765.

"* * * * *."

Currently, both wine and fortified wine are taxed at a rate of 65¢ per gallon, ORS 473.030(2), with an additional 2¢ per gallon tax, ORS 473.030(4). An additional tax of 10¢ per gallon is imposed on fortified wine. ORS 473.030(3). Presently, the total tax imposed on wine, therefore, is 67¢ per gallon, and the total tax imposed on fortified wine is 77¢ per gallon. Respondent does not dispute the accuracy of these figures.

Although the proposed initiative measure would amend only that portion of the tax authorized by ORS 473.030(2) on "alcoholic beverages" (wine and fortified wine), the additional 2¢ per gallon tax on wine and fortified wine authorized by ORS 473.030(4) will continue to be imposed, as will the additional 10¢ per gallon tax on fortified wine. The effect of the measure, if approved by the electorate, is, as petitioner states, to increase the tax on wine from 67¢ to 92¢ per gallon and the tax on fortified wine from 77¢ to $1.02 per gallon.

The tax increases listed in the Attorney General's ballot title's Summary or in respondent's suggested amendment thereto are neither accurate nor complete. We conclude, therefore, that the Attorney General's ballot title should be modified to state the actual taxes, as described above, that would be imposed on wine and fortified wine if the measure becomes law.

■ The Attorney General's ballot title's Summary states that "[r]etail liquor price must be at least 115% of wholesale cost." Petitioner claims that this sentence is inaccurate, incomplete, and misleading.

Section 6 of the proposed initiative measure reads:

"On January 1, 1991, the Oregon Liquor Control Commission shall cause the sale price of alcoholic liquors sold at retail by the commission to be not less than 115 percent over the wholesale cost, *including commission costs.*" (Emphasis added.)

Both parties acknowledge in supplemental information furnished to this court that Section 6 of the measure would result in an increase in the retail sale price of liquor. Petitioner argues that under Section 6 of the measure, "the state would have to take the wholesale cost for the product, add in the approximately 20% state costs for handling the

product, and then set the retail price at 115% over that combined cost. The actual retail mark-up would be closer to 135% or greater." Respondent, on the other hand, claims that Section 6 of the measure does not provide that the wholesale cost is to be increased by 115% and then increased again by commission costs. The phrase "including commission costs," respondent asserts, modifies the words "wholesale cost," and the wholesale cost includes commission costs, and it is this total wholesale cost which is to be increased by at least 115% before retail sale.

If the measure is enacted into law, this court ultimately may be required to decide the meaning and significance of the language "including commission costs." It would be inappropriate for this court to do so in the ballot title's Summary. *See Sampson v. Roberts,* 309 Or 335, 339, 788 P2d 421 (1990). Whatever the words "including commission costs" mean in the context of Section 6 of the measure, the measure's actual language should be used in the Summary, absent a compelling reason to the contrary. *Id.* at 340. We conclude, therefore, that the Summary should be modified to refer to the inclusion of commission costs, as well as to reflect increases in liquor retail sale prices.

■ Petitioner next contends that the ballot title's Summary fails to mention the major effect of the proposed initiative measure, which he asserts is "to take alcoholic beverage tax money outside of the state [G]eneral [F]und and dedicate those funds to particular listed purposes." We disagree.

The major effect of the proposed measure is an increase in beer and "alcoholic beverages" (wine and fortified wine) taxes, an increase in the retail sale price of liquor, and a dedication of most of those revenues to fund state and county chemical dependency programs. It is true that under the measure revenues derived from beer, wine and fortified wine taxes and from the sale of liquor, which are now deposited in the state General Fund, would no longer be deposited there, but that is not the measure's major effect. Rather, the deposit of such revenues in a fund other than the state General Fund is a fiscal consequence of bringing about the measure's major effect. Nevertheless, the reduction of state General Fund revenues is an important fiscal consequence of the measure, of

which Oregon voters should be informed in the Summary's summary of the measure. *See Nelson v. Roberts, supra,* 309 Or at 506, wherein this court made a similar ruling concerning a ballot title's Summary for an initiative measure proposing an increase in cigarette and tobacco taxes and a dedication of those tax revenues to a particular fund.

Substantial compliance with ORS 250.035(1)(c) requires a modification of the Summary to inform the voters that a reduction in state General Fund revenues would result from the measure's passage.

■ ·Although each of petitioner's challenges to the Attorney General's ballot title appear to be principally directed at the Summary, his arguments have consequences for all components, *viz,* the Caption, the Question, and the Summary. We will, therefore, examine the Caption and the Question in the Attorney General's ballot title in the context of petitioner's arguments, which we discussed above.

The Caption in the Attorney General's ballot title reads: "INCREASES BEER, LIQUOR TAXES TO FUND ALCOHOLISM AND DRUG PROGRAMS." Petitioner's proposed Caption reads: "INCREASES ALCOHOL TAXES, FUNDS CHEMICAL DEPENDENCY PROGRAMS OUTSIDE GENERAL FUND." Neither Caption substantially complies with the requirement that the Caption "reasonably identifies the subject of the measure." ORS 250.035(1)(a); ORS 250.085(4).

The proposed measure, if enacted into law, would *not* result in a tax increase on liquor, as suggested by each of the parties' Caption. Rather, as the parties acknowledge, it would result in an increase in the retail sale price of liquor. Moreover, the Attorney General's Caption makes no mention of the measure's tax increase on wine.[6] The reference in petitioner's Caption to the state General Fund suggests that the fiscal effect the measure will have on that particular fund is the subject of the measure. It is not. The reduction of state General Fund revenues that will result from the measure's passage

_____

[6] Although we concluded that the Summary should use the terms "wine" and "fortified wine" in lieu of the statutory language "alcoholic beverages," we find that because of word limitations, only the term "wine" should be used in the Caption and Question components of the ballot title.

is, as stated previously, a fiscal consequence of bringing about the measure's major effect. We modify the Attorney General's ballot title's Caption to read:

"INCREASES BEER, WINE TAXES, LIQUOR PRICES; FUNDS CHEMICAL DEPENDENCY PROGRAMS"[7]

Neither the Question in the Attorney General's ballot title nor the Question in petitioner's proposed ballot title are in substantial compliance with the requirement that the Question "plainly phrase[ ] the chief purpose of the measure * * *." ORS 235.035(1)(b); ORS 250.085(4). As we observed in our discussion of the Caption, liquor taxes will not be increased if the measure becomes law; rather, an increase in the retail price of liquor will result. Additionally, the ballot title's Question is silent on the measure's tax increase on wine.[8] The reference in petitioner's Question to the state General Fund is improper. The reduction in state General Fund revenues would be a fiscal consequence of the measure's passage, not its chief purpose.

Based on the foregoing discussion, we modify the Caption, the Question, and the Summary in the Attorney General's ballot title and certify the following ballot title to the Secretary of State:

INCREASES BEER, WINE TAXES, LIQUOR PRICES; FUNDS CHEMICAL DEPENDENCY PROGRAMS

*QUESTION:* Shall beer and wine taxes and liquor prices be increased and dedicated to fund state and county chemical dependency programs?

*SUMMARY:* Increases beer tax from $2.60 to $6.60 per barrel, wine tax from 67¢ to 92¢ per gallon, fortified wine from 77¢ to $1.02 per gallon. Annual inflation tax increases. Increases retail liquor prices, must be at least 115% over wholesale costs, including commission costs. Taxes, sale revenues dedicated to chemical dependency programs. $25 million biennially to build $250 million Alcoholism and Drug Service

---

[7] *See, supra,* note 3.

[8] *See, supra,* note 6.

Trust Fund. Remainder plus trust fund interest goes to alcoholism, drug fund. Fund distributes: 60% state, 40% counties. Reduces General Fund revenues.

Ballot title certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of the date of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.

**FADELEY, J.,** specially concurring.

I concur that the ballot title should be modified. However, I do not agree that the court's proposed modification goes far enough to accurately or adequately advise the voters of the chief purpose, true subject or major effect of this measure. The inaccurate information which the modified ballot title will provide results from the title's failure to expressly notice that all existing liquor revenues, derived from the existing level of liquor prices and beverage excises as well as the proposed increase, will be lost to the general fund under the provisions of the measure.

Because these lost revenues exceed the amount to be raised by the proposed revenue increases from higher prices and gallonage rates, I do not concur with leaving the voters in the dark. I am not content to describe only the tail on the dog when the voters are being asked to approve both dog and tail in a single vote.

Presently, 56 percent of net revenues from liquor and alcoholic beverages go into the state general fund, 34 percent go to cities and 10 percent go to counties. ORS 471.810. In determining the net revenues, the cost of operation of the Oregon Liquor Control Commission are deducted and paid to the tune of about $47 million dollars for the biennial budget

period. The proposed measure continues this deduction by confirming the provisions of ORS 471.805.

The measure removes all 56 percent of the liquor-related net revenues from the state general fund and may also shift more of the impact of the deduction for liquor-control administrative costs onto the general fund than it now bears. The former loss would equal $56.5 million if the measure were in full effect for the current budget period. *See* 1989-91 Adopted Budget 9 (Schedule C - General Fund Revenues).

The combined effect of this measure and its companion involving cigarette and tobacco taxes is discussed in the specially concurring opinion in *Nelson v. Roberts,* 309 Or 499, 789 P2d 650 (1990). That opinion also more fully discusses the problem with the majority analysis in these companion measures.

Van Hoomissen, J., joins this specially concurring opinion.