Argued and submitted February 13, ballot title certified as modified March 27, 1990

NELSON,
*Petitioner,*

*v.*

ROBERTS,
*Respondent.*

(SC S36844)

789 P2d 650

James N. Gardner, of Lindsay, Hart, Neil & Weigler, Portland, argued the cause and filed the petition for petitioner.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the Answering Memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

Fadeley, J., filed a specially concurring opinion in which Van Hoomissen, J., joined.

## UNIS, J.

This original proceeding, brought by petitioner under ORS 250.085, involves a challenge to a proposed initiative measure's ballot title certified by the Attorney General to the Secretary of State. Petitioner filed with the Secretary of State, pursuant to ORS 250.067(1), timely written comments concerning the Attorney General's earlier draft ballot title and is, therefore, entitled to bring this proceeding. ORS 250.085(2) and (5); *see Deras v. Roberts,* 309 Or 250, 254, 785 P2d 1045 (1990); *Nelson v. Roberts,* 308 Or 417, 420, 781 P2d 344 (1989). We modify the challenged ballot title to the extent hereafter set out.

The ballot title certified by the Attorney General to the Secretary of State reads as follows:

"INCREASES CIGARETTE AND TOBACCO TAXES TO FUND SMOKING, HEALTH PROGRAMS

*"QUESTION:* Shall cigarette and tobacco taxes be increased and dedicated to fund state and county smoking-related and general health programs?

*"EXPLANATION:* Increases cigarette tax from 28¢ to 40¢ per pack. Cigarette Tax increases annually for inflation, starting in 1992. Increases tobacco distribution tax from 35% to 50% of wholesale price. $25 million of taxes go biennially to build $250 million Oregon Health Trust Fund. Remainder plus trust fund interest goes to Oregon Health Fund. Fund distributes 60% to state, 40% to counties, for smoking-related and general health programs. Legally dedicates tobacco taxes to such programs."

This court's role in reviewing a ballot title is to determine whether a ballot title certified by the Attorney General to the Secretary of State is in "substantial compliance" with ORS 250.035 (in form and content) and ORS 250.039 (as to certain readability standards).[1] ORS 250.085(4); *see Deras v.*

---

[1] Under ORS 250.039, a ballot title must comply with a readability standard set by the Secretary of State "to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy." *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). The "Flesch Formula for Readability" has been designated by the Secretary of State as the Standard of Readability. *Deras v. Roberts,* 309 Or 410, 420, 788 P2d 987 (1990); *Deras v. Roberts,* 309 Or 250, 259-260, 785 P2d 1045 (1990). Petitioner does not raise whether the certified ballot title complies with ORS 250.039. Moreover, the parties have not addressed the propriety of this court's considering that issue when it was not raised either before the Secretary of State or this court. *See* ORS 250.085(4) and (5); ORAP 11.30(4)(a). We will not address the issue in this case.

*Roberts, supra; Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988); *Kafoury v. Roberts,* 303 Or 306, 312-313, 736 P2d 178 (1987).

■     ORS 250.035(1)[2] mandates three components for a ballot title: (1) a Caption which reasonably identifies the measure's subject; (2) a Question which plainly phrases the measure's chief purpose; and (3) a concise and impartial statement[3] which summarizes the measure and its major effect. *Nelson v. Roberts, supra,* 308 Or at 420-421; *Reed v. Roberts, supra,* 304 Or at 652-653.[4] If a ballot title substantially complies with these statutory standards, this court will certify that ballot title. ORS 250.085(4). This is true even if this court were to prefer a petitioner's proposed ballot title or one written by this court. *Teledyne Wah Chang v. Paulus,* 295 Or 762, 766, 670 P2d 1021 (1983).

Petitioner claims that each of the three parts of the ballot title — the Caption, the Question, and the Summary — does not substantially comply with requirements of ORS 250.035(1) because the ballot title does not mention the initiative measure's subject, chief purpose and major effect, which he states is the "withdrawal of all tobacco tax revenue from the state General Fund."

Petitioner contends that currently the state General Fund receives 79 percent of the revenue generated by the cigarette tax and 100 percent of the revenue generated by the

---

[2] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

[3] Hereinafter, the term "Summary" will be used to refer to the 85 words required by ORS 250.035(1)(c). *See Deras v. Roberts, supra,* 309 Or at 418 n 6.

[4] ORS 250.035(2) provides that "the ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election." At no time has petitioner contended that this statutory mandate is not satisfied. We, therefore, need not concern ourselves in this proceeding with the requirements of ORS 250.035(2). *See* ORS 250.085(5).

tax on other tobacco products; that during the 1991-1993 biennium the state General Fund would receive tobacco tax revenues at 50 percent of the current rate if the proposed measure were approved by the electorate; and that beginning July 1, 1993, the proposed measure would withdraw all cigarette and other tobacco tax revenues from the state General Fund and dedicate it to a new "Oregon Health Fund." Petitioner also contends that the withdrawal of all cigarette and tobacco tax revenues from the state General Fund and the dedication of such tax revenues to a new Oregon Health Fund would have profound fiscal consequences of which Oregon voters should be informed, but that nowhere in the challenged ballot title is there any hint of the revenue impact on the state General Fund.[5]

The initiative measure, if approved by Oregon voters, would not result in the withdrawal or removal of any cigarette or tobacco tax revenues from the state General Fund, as petitioner states. Revenues generated by cigarette and tobacco products taxes eventually would, however, no longer be deposited in the state General Fund. Rather, such tax revenues would be dedicated for deposit in a new "Oregon Health Fund" to fund smoking-and-tobacco-use prevention programs and other health services. Nowhere in the ballot title is this fiscal consequence to the state General Fund mentioned.

The issue, therefore, is whether and, if so, where in the ballot title mention should be made that revenues which are now deposited in the state General Fund are to be dedicated elsewhere. For the reasons that follow, we hold that the proposed measure's fiscal effect on the state General Fund should be mentioned in the Summary component of the measure's ballot title.

## THE BALLOT TITLE'S CAPTION CORRECTLY IDENTIFIES THE SUBJECT OF THE MEASURE

The subject of the proposed initiative measure is an

---

[5] There is no dispute that a substantial portion of revenues from cigarette and other tobacco products taxes currently is deposited in the state General Fund. *See, e.g.,* ORS 323.455. In support of his position, petitioner submitted estimates of the dollar amounts that would no longer be deposited in the state General Fund. The Secretary of State ultimately will certify an estimate of the financial impact of the proposed measure in the voters' pamphlet and on the ballot. *See* ORS 250.125.

increase in cigarette and tobacco products taxes and a dedication of revenues derived from such taxes to fund (1) programs to prevent smoking and the use of tobacco products, and (2) general health programs. The Caption of the ballot title prepared by the Attorney General substantially complies with the requirement of ORS 250.035(1)(a) that it reasonably identify the measure's subject in not more than 10 words.

## THE BALLOT TITLE'S QUESTION PLAINLY PHRASES THE MEASURE'S CHIEF PURPOSE

■■ A measure's chief purpose is the most significant aim or end which the measure is designed to bring about. *Reed v. Roberts, supra,* 304 Or at 655. It is the target at which the measure's arrows are aimed. The measure's arrows are its unambiguous language, the context in which the measure was drafted and the statements of its sponsors.[6] The unambiguous language of the proposed initiative measure and the statements of its sponsors[7] point directly to and bring into sharp

---

[6] This court determines a measure's chief purpose by reviewing the measure's unambiguous language, the context in which the measure was drafted, and the statements of its sponsors. Context, as that term is used here, includes the legal context, as well as the more particular circumstances under which the measure was drafted. *See Deras v. Roberts, supra,* 309 Or at 258 n 10; *Glerum v. Roberts,* 308 Or 22, 28, 744 P2d 1093 (1989); *Reed v. Roberts, supra,* 304 Or at 654, 655.

[7] Section 1 of the proposed measure reads:

"There is increasing recognition of the health hazards incurred by the use of cigarettes and other tobacco products. Priority must be given to programs, especially for youth, to prevent and stop tobacco use. Cigarette and tobacco use has a significant adverse impact on the health of those using the products and [of] those exposed to tobacco smoke. Revenues derived from taxes on tobacco products shall be applied to prevent and treat that dependency and improve the availability and quality of health services throughout Oregon."

In "An Annotation of the Initiative," prepared by the measure's sponsors, it is stated:

"The purpose of this initiative is to respond in an effective way to the problems caused by smoking and the use of tobacco products in Oregon. Revenues raised from the sale of cigarettes and other tobacco products are dedicated to preventing tobacco use, treating nicotine dependency and funding public health services."

The Annotation summarizes Sections 2 and 3 of the measure as follows:

"Section 2. The tax on cigarettes is raised from 1.4¢ per cigarette to 2.0¢ per cigarette. This rate is adjusted annually to reflect increases in the consumer price index.

"Section 3. The tax on tobacco products other than cigarettes is increased from 35% to 50%."

focus the measure's chief purpose.[8] That chief purpose is an increase in cigarette and tobacco products taxes and the dedication of revenues derived from such taxes to fund smoking-and-tobacco-use prevention programs and other health services.

As previously stated, it is true that under the proposed measure revenues derived from cigarette and tobacco products taxes eventually would no longer be deposited in the state General Fund, but that is not the aim or end which the measure is designed to bring about. Rather, the deposit of cigarette and tobacco products tax revenues in a fund other than the state General Fund is a fiscal consequence of bringing about the measure's aim or end.

The Question component of the ballot title substantially complies with the requirement that it plainly phrase the measure's chief purpose in not more than 20 words, so that an affirmative response to the Question corresponds to an affirmative vote on the measure.

## THE BALLOT TITLE'S SUMMARY DOES NOT SUBSTANTIALLY COMPLY WITH STATUTORY REQUIREMENTS

The ballot title's Summary must substantially comply with the requirement that it concisely and impartially summarize the measure and its major effect. ORS 250.035(1); 250.085(4). The major effect of the proposed initiative measure is the same as the measure's subject and chief purpose, *i.e.,* an increase in cigarette and tobacco products taxes and a dedication of such tax revenues to fund smoking-and-tobacco-use prevention programs. The Attorney General's Summary substantially complies with the requirement that it concisely and impartially summarize the measure's major effect.

But that does not end our review. ORS 250.035(1)(c) requires that the Summary concisely and impartially summarize the measure, as well as its major effect, to the extent permitted by the 85-word limitation. The more difficult question relates to the Summary's summary of the measure. Is the

---

[8] The parties have not supplied this court any information, nor do we have any, concerning the context in which the measure was drafted.

Summary's summary of the measure in "substantial compliance" with ORS 250.035(1)(c) when it does not inform Oregon voters that cigarette and tobacco products tax revenues eventually would no longer be deposited in the General Fund? We answer "No."

" 'Substantial compliance requires compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' " *Rogers v. Roberts,* 300 Or 687, 691, 717 P2d 620 (1986), *quoting Sabatini v. Jayhawk Construction Co., Inc.,* 214 Kan 408, 411, 520 P2d 1230 (1974). The Summary informs Oregon voters that "tobacco taxes" will be dedicated to fund "smoking-related and general health programs." In the context of the proposed measure, "dedicated fund" is a fund in the state treasury that by law is set aside for a limited purpose. *See* ORS 291.002(3). The Summary does not inform the electorate that if the measure becomes law, deposits of cigarette and tobacco products tax revenues into the state General Fund initially will be reduced and eventually will no longer be made. The significant fiscal effect the measure will have on the state General Fund is reflected in "An Annotation of the Initiative," Section 8. There, the sponsors of the measure state: "A large portion of tobacco tax revenues currently go to the General Fund — $128 million per biennium. Over the next two biennia, the General Fund support will be eliminated."

The diversion or redirection of monies from the state General Fund is an important fiscal consequence of the measure, of which the electorate should be informed. Substantial compliance with ORS 250.035(1)(c) requires mention of this important fiscal consequence in the ballot title's Summary.

This court, therefore, modifies the Attorney General's ballot title's Summary to read:

*SUMMARY:* Increases cigarette tax from 28¢ to 40¢ per pack. Annual inflation cigarette tax increases, starting in 1992. Increases tobacco distribution tax: 35% to 50% of wholesale price. $25 million of taxes go biennially to build $250 million Oregon Health Trust Fund. Remainder plus trust fund interest goes to Oregon Health Fund. Fund distributes 60% to state, 40% to counties, for smoking-related and health programs. Dedicates tobacco taxes to such programs. Reduces General Fund revenues.

In conclusion, we certify the following ballot title to the Secretary of State:

## INCREASES CIGARETTE AND TOBACCO TAXES TO FUND SMOKING, HEALTH PROGRAMS

*QUESTION:* Shall cigarette and tobacco taxes be increased and dedicated to fund state and county smoking-related and general health programs?

*SUMMARY:* Increases cigarette tax from 28¢ to 40¢ per pack. Annual inflation cigarette tax increases, starting in 1992. Increases tobacco distribution tax: 35% to 50% of wholesale price. $25 million of taxes go biennially to build $250 million Oregon Health Trust Fund. Remainder plus trust fund interest goes to Oregon Health Fund. Fund distributes 60% to state, 40% to counties, for smoking-related and health programs. Dedicates tobacco taxes to such programs. Reduces General Fund revenues.

Ballot title certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of the date of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.

**FADELEY, J.,** specially concurring.

I agree with the majority that the certified ballot title must be modified to inform the voters of the initiative measure's impact on existing tax revenues and on the state general fund which now uses and relies on those revenues to support numerous state programs. Among those programs are the criminal justice system (including corrections), education, and medical care for the poor and aged.

If the proposed measure takes full effect, existing tobacco tax revenues of $126 million per biennium will be

diverted from the state general fund to the limited uses specified in the measure. Additional tobacco tax revenues generated from tax increases that the measure mandates are estimated to be much less than half as much as the loss to the general fund resulting from the diversion of existing tax revenues. The tax increase revenues do not replace the lost general fund dollars. The increases are also dedicated to the limited uses specified in the measure.

This measure is one of two initiated by the same chief sponsor. The other measure, which involves revenues from taxes on alcoholic beverages, is the subject of a companion ballot title review decided in *Aughenbaugh v. Roberts,* 309 Or 510, 789 P2d 656 (1990). That measure repeats the same procedure — diverting existing general fund revenues, generating new revenues by increasing "tax" rates some, and then dedicating both the old and the new revenue streams to the limited uses specified in the initiative.

If these two measures are approved by the people, the combined loss of revenues now relied upon by the general fund would, for example, equal 70 percent of the current State Corrections Department budget. The amount of the loss to the general fund from the two initiatives, if adopted, is more than all direct property tax relief programs, including Home Owner and Renter relief, Senior Deferral, and Targeted Offsets for school districts in the safety net. Legislative Fiscal Office, Corrected Summary of Legislative Adopted 1989-91 Budget, 11 (Aug. 1989). The major portion of this loss comes from the diversion of existing tobacco taxes.

The modified ballot title Caption and Question do not advise the voter of this significant loss of general fund revenue, let alone advise them that the diversion of existing tax funds from the general fund is greater in dollar amount than from the tax increase. Instead only the tax increase is mentioned.

The modified ballot title Summary does advise the people of a reduction in general fund revenues. However, many or most Oregon voters will not find the Summary printed on their ballots, nor will there be an estimate of financial effects printed on those ballots. *See* ORS 254.175. But the Caption and Question will be printed on the voter's ballot. *Id.* Thus, the cursory though correct reference which, under the

court's opinion, will only appear in the Summary will utterly fail to effectively advise Oregon voters of what this measure would actually accomplish. They should have that information.

The initiative measure involves both diversion of existing revenues from the general fund and an increase in tax rates. The measure dedicates these combined revenues entirely to unknown programs, described in general terms only as "smoker related" or "health related." The Caption and Question should reflect these chief purposes and subjects.

A ballot title's Caption and Question may reflect dual chief purposes or subjects. *See Reed v. Roberts,* 304 Or 649, 655, 748 P2d 542 (1988). Here, the modified Caption and Question are silent on a chief purpose or subject as measured by the most significant fiscal impact of the initiative proposal, *i.e.,* the loss of existing tobacco tax revenues to the general fund.[1] I cannot support what remains inadequate information for the voters.

Van Hoomissen, J., joins this special concurring opinion.

---

[1] A critic should accept the responsibility to show how the thing criticized may be better done. In that spirit, I suggest:

**CAPTION:** DIVERTS TOBACCO TAXES FROM GENERAL FUND; INCREASES TAXES

**QUESTION:** Shall cigarette and tobacco taxes be diverted from general fund and increased to fund new smoker and general health programs?