Argued and submitted August 29, ballot title certified as modified October 12, 1995

## Lynn R. NAKAMOTO,
Emilio Hernandez, Jr., Ruth Ascher,
James Posey and Jann Carson,
*Petitioners,*

*v.*

## Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42434)

904 P2d 165

Scott J. Meyer, Portland, argued the cause and filed the petition for petitioners.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause and filed the response for respondent. With him on the answering memorandum were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DURHAM, J.

Unis, J., filed a dissenting opinion.

## DURHAM, J.

This is an original proceeding in which petitioners challenge the ballot title for a proposed initiative measure.[1] Petitioners are electors who submitted timely written comments about the Attorney General's draft ballot title, pursuant to ORS 250.067(1). Accordingly, petitioners are entitled to seek a different title in this court. ORS 250.085(2) (1993). We modify the ballot title in certain respects and, as modified, certify it to the Secretary of State.[2]

The Attorney General certified the following ballot title for the measure to the Secretary of State:

"FORBIDS GOVERNMENT PREFERENCES
BASED ON RACE, RELIGION,
SEX, NATIONAL ORIGIN

"QUESTION:   Shall statute forbid state or local governmental preferences based on listed factors, in education, employment, contracting, provision of public services?

"SUMMARY:   Adopts statute. Forbids state, local government discrimination against or preference for citizens based on race, religion, color, sex, or national origin. Applies in education, employment, contracting, and provision of public services. Forbids government from compelling citizens to discriminate against or grant preference based on same factors, in education, employment, contracting, public services. Does not affect voluntary private programs to recruit minorities, veterans or disabled persons. Allows classifications based on sex or ability necessary to normal operation of state's system of public employment or public accommodations."

Petitioners argue that the Attorney General's ballot title does not comply substantially with ORS 250.035(1) (1993).[3] They challenge all three portions of the Attorney

---

[1] The Appendix to this opinion contains the text of the proposed measure.

[2] ORS 250.085(5) (1993) requires this court to draft and certify a new ballot title if the ballot title certified by the Attorney General does not comply substantially with ORS 250.035 (1993) and *former* ORS 250.039, in those cases in which *former* ORS 250.039 is applicable. In *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 25, 902 P2d 1143 (1995), this court, with two justices dissenting, held that that requirement does not violate the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution.

[3] ORS 250.035(1) (1993) provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

General's ballot title. They argue that the certified ballot title is deficient, because it makes no reference to affirmative action and fails to mention either that the measure would repeal existing state statutes requiring affirmative action programs or that those statutes allow affirmative action only to remedy the effects of past or present discrimination. To correct those alleged deficiencies, they propose the following ballot title:

"ABOLISHES AFFIRMATIVE ACTION
BASED ON RACE, RELIGION,
SEX, NATIONAL ORIGIN

"QUESTION:  Shall statute abolish and ban all state and local government affirmative action, even programs to cure past or present discrimination?

"SUMMARY:  Repeals all existing affirmative action statutes and abolishes all government affirmative action policies and programs. Adopts ban on state, local government discrimination and preferences based on race, religion, color, sex, or national origin, even to cure past and present discrimination. Applies in education, employment, contracting, and providing public services. Forbids government from compelling citizens to discriminate against or grant preferences based on same factors. Does not affect voluntary private programs. Allows classifications based on sex or ability necessary to employment and accommodations."

We address each aspect of the ballot title separately.

THE CAPTION

■     Petitioners argue that the certified caption does not "reasonably identif[y] the subject of the measure," ORS

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

The 1995 Legislature amended ORS 250.035 and 250.085. However, those changes do not apply to the ballot title in this case. *See* Or Laws 1995, ch 534, § 20 (act applies to initiative filed after the effective date of act, *i.e.*, July 7, 1995). Because the prospective petition in this case was filed before the effective date of the act, the earlier versions of those statutes apply.

250.035(1)(a) (1993), because it makes no reference to the abolition of affirmative action based on race, religion, sex, and national origin. We decline to consider petitioners' challenge to the certified caption, because petitioners did not challenge the caption during the comment stage. Petitioners' comments concerned only the draft question and summary, not the caption. ORS 250.085(6)[4] precludes this court from considering any arguments concerning the ballot title that were not presented in writing to the Secretary of State. *See Crumpton v. Keisling,* 317 Or 322, 326, 855 P2d 1107 (1993) (construing that statute to "require that some notice of the contended defect be given to the Secretary of State"). Petitioners' challenge to the certified caption comes too late. *See McCoid v. Kulongoski,* 321 Or 452, 454, 900 P2d 1028 (1995) (holding that a court challenge to a phrase in the certified question is untimely where the petitioner made no challenge to that phrase in writing to the Secretary of State).

## THE QUESTION

Petitioners argue that the certified question fails to phrase plainly the measure's chief purpose which, according to petitioners, is to abolish and ban all affirmative action by state and local governments. In addition, they argue that the question should state that the measure's prohibition extends to programs to cure past and present discrimination.

The Attorney General responds that the measure would not abolish or ban all affirmative action, because not all affirmative action programs necessarily give a "preference" based on race, religion, color, sex, or national origin. In support of that argument, the Attorney General relies on the definition of "affirmative action" in ORS 243.305(2) as

"a method of eliminating the effects of past and present discrimination, intended or unintended, on the basis of race,

---

[4] ORS 250.085(6) provides:

"When reviewing a title prepared by the Attorney General, *the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State* unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067." (Emphasis added.)

The petitioners do not argue that the wording in the caption, about which they complain, was added after the end of the comment period.

religion, national origin, age, sex, marital status or physical or mental disabilities."[5]

The Attorney General argues that, as defined in that statute, affirmative action does not require preferences for or discrimination against citizens based on the listed factors. He argues, for example, that affirmative action may include a program to ensure that various minority groups have notice of job openings and the opportunity to apply and that such a program would not give any "preference" to those minority groups. In other words, the Attorney General argues that, because the phrase "affirmative action," as defined in ORS 243.305(2), encompasses programs that the measure would not prohibit, it would be inaccurate for the certified question to refer to the measure's "chief purpose" as abolishing affirmative action.

■ The Attorney General's argument is well taken. If adopted by the voters, the measure would prohibit state and local governments from granting "a preference to any citizen or group of citizens on the basis of race, religion, color, sex, or national origin in matters of education, employment, contracting, or the provision of public services." It would not abolish all forms of affirmative action which, under ORS 243.305(2) and other statutes that define the phrase, include programs aimed at ensuring equal opportunities in matters of education, employment, contracting, and the provision of public services.

■ A measure's "chief purpose" is "the most significant aim or end which the measure is designed to bring about." *Nelson v. Roberts*, 309 Or 499, 504, 789 P2d 650 (1990). We agree with the Attorney General that the end that the measure is designed to bring about is to forbid state or local

---

[5] Other statutes also define the phrase "affirmative action." ORS 182.100(3) provides:

"As used in this section, 'affirmative action' means a method of eliminating the effects of past and present discrimination, intended or unintended, on the basis of race, religion, national origin, age, sex, marital status or physical or mental disabilities, that are evident or indicated by analysis of present appointment patterns, practices and policies."

ORS 279.053(3) provides:

"As used in this section 'affirmative action' is a program designed to insure equal opportunity in employment and business for persons otherwise disadvantaged by reason of race, color, religion, sex, national origin, age or physical or mental disability."

preferences based on the listed factors in education, employment, contracting, and provision of public services. The certified question plainly phrases that purpose. Therefore, we reject petitioners' claim that the question fails to comply substantially with the requirements of ORS 250.035(1)(b) (1993).

## THE SUMMARY

Regarding the summary, petitioners restate their argument that the certified ballot title should refer to the abolition of affirmative action, including programs aimed at curing the effects of past and present discrimination. Petitioners also argue that the measure would have the effect of repealing all existing state statutes that require affirmative action by state and local government in employment, contracting, education, and provision of public services, and they argue that the summary should disclose that effect.

We reject petitioners' first contention for the same reason that we rejected that challenge to the certified question — the measure would not necessarily *abolish* all affirmative action programs by state and local governments. The Attorney General acknowledges, however, that the measure *could limit* affirmative action in Oregon, including programs intended to cure the effects of past and present discrimination. Accordingly, he states that it may be appropriate for this court to modify the summary to cure that defect, and he suggests the following revision:

> "SUMMARY:  Adopts statute. Law now provides for government affirmative action programs to provide fair and equal opportunity in employment and public contracting, to cure past and present discrimination. Measure forbids state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against or grant preferences based on same factors, in education, employment, contracting, public services. Does not affect voluntary private programs to recruit minorities, veterans, disabled persons."

The Attorney General asserts that his revised summary would convey more precisely to voters the major effect of the measure because, by informing voters of the current status of

Oregon law, voters could infer more easily that the measure would have some, as yet not clearly defined, effect on affirmative action programs in Oregon.

■■ The proposed measure not only *could* limit affirmative action programs in Oregon, it *would* do so, by prohibiting state and local governments from giving any preference to certain minority groups to cure the effects of present or past discrimination. Unquestionably, some affirmative action programs established pursuant to existing state laws *do* give a preference based on race, religion, sex, or national origin, to remedy the effects of past and present discrimination.[6] We agree with petitioners and the Attorney General that that is an important change in Oregon law that deserves mention in the summary. *Cf. Kane v. Kulongoski,* 318 Or 593, 602-03, 871 P2d 993 (1994) (abolition of criminal penalties against a complying physician who prescribes a lethal drug for physician-assisted suicide is a sufficiently major change in Oregon law to constitute a "major effect" of the proposed measure that must be included within the summary). However, we do not believe that the Attorney General's revised summary adequately summarizes that effect, as required by ORS 250.035(1)(c) (1993), because it requires voters *to infer* that the measure would limit affirmative action programs currently authorized under Oregon Law. The summary should state that information expressly.

Regarding petitioners' second contention, the Attorney General argues that nothing in the text of the measure expressly amends or repeals any statute relating to affirmative action. He acknowledges that the measure's relating clause mentions the amendment of ten statutes and the repeal of eight others, but argues that a ballot measure's

---

[6] For example, OAR 125-30-010(2)(a) requires state agencies to identify public contracts for assignment to a set aside program. Contracts in the set aside program are subject to competitive bidding "among minority business enterprises only." OAR 125-30-000(13). In order to qualify as a "minority business enterprise," the business must be "at least 51 percent owned by a minority individual(s) or women[.]" OAR 125-030-000(8). Under OAR 125-30-000(12), "minority individuals" are defined as persons belonging to certain racial or ethnic groups. Thus, the state awards contracts in the set aside program exclusively to businesses owned predominantly by women or persons who belong to certain racial or ethnic groups and, thereby, gives those individuals a "preference" in the awarding of public contracts in the set aside program.

relating clause cannot supply a substantive provision that is not a part of the measure's text.

■ We agree with the Attorney General's argument that a ballot measure's relating clause cannot supply express provisions that are not otherwise in the measure's text. *See* ORS 174.540 (statute section headings and explanatory notes "do not constitute any part of the law"). We, therefore, reject petitioners' claim that the certified summary fails to comply substantially with ORS 250.035(1)(c) (1993), because the proposed measure does not repeal all existing affirmative action statutes.

In accordance with the foregoing discussion, we modify the Attorney General's certified summary for the ballot title, as follows:

SUMMARY: Adopts statute. Law now provides for government affirmative action programs to provide fair and equal opportunity in employment and public contracting, to cure past and present discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against or grant preference based on same factors. Does not affect voluntary private programs to recruit minorities, veterans or disabled persons.

We modify the ballot title certified to the Secretary of State by the Attorney General. We certify to the Secretary of State the following ballot title:

FORBIDS GOVERNMENT PREFERENCES
BASED ON RACE, RELIGION,
SEX, NATIONAL ORIGIN

QUESTION: Shall statute forbid state or local governmental preferences based on listed factors, in education, employment, contracting, provision of public services?

SUMMARY: Adopts statute. Law now provides for government affirmative action programs to

provide fair and equal opportunity in employment and public contracting, to cure past and present discrimination. Measure would limit such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Forbids government from compelling citizens to discriminate against or grant preference based on same factors. Does not affect voluntary private programs to recruit minorities, veterans or disabled persons.

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(10).

## Appendix

### "A BILL FOR AN ACT

"Relating to discrimination; creating new provisions; amending ORS 240.105, 240.306, 240.379, 284.705, 285.500, 285.637, 461.120, 656.753, 659.100 and 776.300; and repealing ORS 182.100, 243.305, 243.315, 279.053, 341.541, 352.380, 659.025 and 659.027.

"Be it enacted by the People of the State of Oregon:

"*Section 1.*(1) Neither the state nor any of its political subdivisions shall discriminate against or grant a preference to any citizen or group of citizens on the basis of race, religion, color, sex, or national origin in matters of education, employment, contracting, or the provision of public services.

"(2)   Neither the state nor any of its political subdivisions shall compel any citizen to discriminate against or grant a preference to any other citizen or group of citizens on the basis of race, religion, color, sex, or national origin in matters of education, employment, contracting, or the provision of public services.

"*Section 2.*(1) The Oregon Department of Labor shall establish such administrative mechanisms that are necessary to investigate complaints and penalize violations of Oregon State Civil Rights Statutes.

"(2)   Funding for the Department of Labor, Civil Rights Divisions, shall be increased from the transfer of the budget of the Office of Affirmative Action to the Oregon Department of Labor.

"*Section 3.*(1) This act shall apply only to actions taken by the state or political subdivisions of the state action after the effective date of this act.

"(2)   Nothing in this act shall be interpreted as prohibiting classifications based on sex or ability that are reasonably necessary to the normal operation of the state's system of public employment or public accommodations.

"(3)   The provisions of this act do not affect any voluntary, nongovernmental program for the recruitment to minorities, veterans or disabled persons.

"(4)   If any part or parts of this act are found to be in conflict with the United States Constitution, the remaining parts shall be implemented to the maximum extent permitted by the United States Constitution. Any provision held invalid shall be severable from the remaining portions of this act."

**UNIS, J.,** dissenting.

I adhere to my view that, to the extent that ORS 250.085(5) (1993) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different than the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution. *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting). I would, therefore, dismiss this case for lack of jurisdiction.