FILED: March 25, 2004


IN THE SUPREME COURT OF THE STATE OF OREGON


TIM NESBITT,


Petitioner,


v.


HARDY MYERS,
Attorney General,


Respondent.


(SC S51107)


En Banc


Submitted on the record January 21, 2004.


Lynn-Marie Crider, Salem, filed the petition for petitioner.


Judy C. Lucas, Assistant Attorney General, Salem, filed the
answering memorandum for respondent. With her on the answering
memorandum were Hardy Myers, Attorney General, and Mary H.
Williams, Solicitor General.


DE MUNIZ, J.


Ballot title referred to Attorney General for modification.


DE MUNIZ, J.

In this ballot title review proceeding brought under
ORS 250.085(2), petitioner contends that the Attorney General's
certified ballot title for Initiative Petition 117 (2004) does
not comply with the requirements of ORS 250.035(2)(d). If
adopted, Initiative Petition 117 would amend the statutes that
control union elections for public employees in Oregon. 
Presently, if unionized public employees wish to change or
terminate their union representation, a significant number of
their membership affirmatively must seek to do so by petitioning
the Employment Relations Board (ERB) to hold an election for that
purpose. Under Initiative Petition 117, that electoral choice
would be placed automatically before public sector union members
in mandatory elections regularly conducted by the State Labor
Commissioner before the expiration of each bargaining unit's
collective bargaining agreement. 

We review ballot titles certified by the Attorney
General to determine whether they substantially comply with the
requirements of ORS 250.035(2). See ORS 250.085(5) (so stating). 
For the reasons that follow, we conclude that the ballot title at
issue here does not comply substantially with those requirements
and we therefore refer it to the Attorney General for
modification.

Appendix A to this opinion sets out the text of
Initiative Petition 117. For that proposed measure, the Attorney
General certified the following ballot title:

"REQUIRES EMPLOYEE ELECTION TO MAINTAIN
UNION REPRESENTATION BEFORE EXPIRATION OF
EACH PUBLIC SECTOR UNION CONTRACT


"RESULT OF 'YES' VOTE: 'Yes' vote requires state
to conduct election by affected public employees before
expiration of each union contract, requiring a majority
vote to maintain union representation. 


"RESULT OF 'NO' VOTE: 'No' vote retains existing
law allowing public employees to retain their chosen
union representation until employees request election
to discontinue or replace current union representation.

"SUMMARY: Under current law, public employees
represented by a union may petition Employment
Relations Board for an election to change or terminate
union representation. Election may be requested before
termination of each collective bargaining agreement but
must be requested by a sufficient percentage of
affected employees. Unless employees request election
and a majority vote for change, union representation
continues past expiration of collective bargaining
agreement. No election may occur within 12 months of
previous election. Proposed measure requires State
Labor Commissioner to conduct an election before the
expiration of every public sector union contract. 
Provides no funding. Union representation terminates
unless majority of employees vote to continue
representation; voting employees select union. No
election may occur within 24 months of election
discontinuing union representation. Other provisions."

Petitioner challenges only the summary of the certified
ballot title. He first argues that, unless the summary contains,
as a threshold matter, some statement explaining that election by
a majority of workers is required initially to attain union
representation, voters cannot understand the major effect of the
proposed measure. We disagree. The summary must be worded so
that voters will understand the breadth of a proposed measure's
impact. Sampson v. Roberts, 309 Or 335, 339, 788 P2d 421 (1990). 
In this instance, the text of the proposed measure contains
nothing that would alter current Oregon law regarding the
initiation of union representation. As a result, the type of
statement that petitioner seeks to include in the summary has
little, if any, connection with the proposed measure's impact. Petitioner, however, makes a second argument regarding
the summary's adequacy as it relates to subsection (g) of
Initiative Petition 117. That subsection provides: 

"The employees in a bargaining unit in which a
majority of the employees has [sic] voted not to be
represented by a union may not be represented by a
union thereafter, unless a majority of the employees
vote in a vote-by-mail, secret ballot election
conducted by the State Labor Commissioner not earlier
than two years after the date of the last election at
which the employees chose not to be represented by a
union." 

(Emphasis added.) The Attorney General's summary, in turn,
states, "No election may occur within 24 months of election
discontinuing union representation." (Emphasis added.) 
Petitioner contends that that portion of the summary is
misleading. Specifically, he argues that the 24-month election
bar does not result solely from elections that discontinue
existing union representation. The text of the proposed
measure's subsection (g), petitioner maintains, establishes a 24-month election bar after any election in which a majority of
unrepresented public employees vote to reject union
representation.

The essence of the Attorney General's response is that
subsection (g), when read in context with the other provisions of
the proposed measure, is limited to elections to discontinue
union representation. We disagree with the Attorney General.

The proposed measure's initial paragraph, labeled
Section 1, and subsections (a) through (f), unambiguously refer
to an election requiring an already-unionized bargaining unit to
vote on the question of continued union representation. Section
1, for example, describes the election in question as one that
"shall be held to determine whether the employees represented
under the agreement wish to continue to be represented by a union
* * *." (Emphasis added.) Subsection (f), in turn, provides
that, if a majority of the participating workers "vote not to be
represented by a union, union representation of that bargaining
unit shall cease" at an appointed time. (Emphasis added.) In
between those two provisions, subsections (a) through (e) spell
out the mechanics of the election in question.

In contrast, subsection (g) is devoid of any reference linking application of that subsection to existing union
representation. The text of that subsection is not ambiguous:
the proposed measure bars a subsequent unionization election for
two years following "the last election at which the employees
chose not to be represented by a union." That phrase, as
petitioner correctly observes, covers two kinds of elections: 
initial unionization elections that fail and decertification
elections that successfully remove union representation. The
words of subsection (g) are not limited solely to periods
following decertification elections. As a result, we hold that
the Attorney General's certified ballot title for Initiative
Petition 117 (2004) fails to comply substantially with the
requirements of ORS 250.035(2)(d). (1) We refer the ballot
title to the Attorney General for modification. See ORS
250.085(8) (authorizing that procedure).

Ballot title referred to Attorney General for
modification. 



1. Our holding necessarily means that the Attorney
General's statement in the summary regarding the role of the
Labor Commissioner is inaccurate and also must be modified.

Return to previous location.