Submitted on petition and memorandum December 21, 1981,
ballot title certified January 5, 1982

CHRISTIE et al,
*Petitioners,*
*v.*
PAULUS,
*Respondent.*

(SC 28309)

638 P2d 478

David A. Rhoten, Salem, filed petition to review ballot title for petitioners. With him on the petition were Rhoten, Rhoten & Speerstra.

Dave Frohnmayer, Attorney General, Salem, filed answering memorandum to petition for respondent. With him on the memorandum were Stanton F. Long, Deputy Attorney General, William F. Gary, Solicitor General, John A. Reuling, Jr., Chief Counsel, Opinion Section, and Max Rae, Law Clerk.

PER CURIAM

## PER CURIAM.

Petitioners challenge a ballot title prepared for respondent Secretary of State by the Attorney General. Upon a petition stating that a proposed ballot title is "insufficient or unfair," ORS 250.085, this court must review the title and certify to the Secretary of State a title "which meets the requirements of ORS 250.035." That section provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words by which the measure is commonly referred to;

"(b) A question of not more than 20 words which plainly states the purpose of the measure, and is phrased so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 75 words of the chief purpose of the measure.

"(2) The ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election."

The ballot title at issue concerns a proposed initiative measure to amend the statutes governing the State Forestry Department. The amendments would change existing law in several respects. The State Forester, who presently is appointed by and serving at the pleasure of the State Board of Forestry, would be appointed by the Governor subject to confirmation by the Senate. Or Const art III, § 4. The composition of the Board of Forestry would be changed from 18 members drawn from the forest products industry in different regions of the state or "recommended by" certain interest groups to nine members, three from industry and six "chosen to represent the general public."[1] Instead of its present authority to "supervise all matters of forest policy and management," ORS 526.016, the board would "establish policy, to be implemented by the State Forester, for the propagation, protection and enhancement of the forests of this state," but expressly excluding "the sale of forest products." Also, the proposed measure would add a statutory formula for the sale of forest products from

[1] Cf. Megdal v. Board of Dental Examiners, 288 Or 293, 307, 605 P2d 273 (1980).

each of four specified "forest management regions" annually "on a sustained yield basis with the primary goal of producing economic stability in each region."

The Attorney General certified the following ballot title and caption for the proposed measure:

"REQUIRES SUSTAINED YIELD MANAGEMENT OF STATE TIMBER, RESTRUCTURES FORESTRY BOARD

*"Question:* Shall Forestry Board's sustained yield management policy for state timber be changed and set into law and Board be restructured?

*"Explanation:* Measure requires by law sustained yield management of state timber, except Common School Lands. Forestry Board policy is now to manage state timber sales to avoid significant future harvest declines. Measure limits annual sales to maintainable level, except where future yields unaffected. Fifteen voting member Forestry Board cut to nine; with six public, three forest industry members. Board to set forest policy, but not to supervise timber sales or management. Governor to pick State Forester."

Petitioners propose the following alternative ballot title and caption:

"RESTRUCTURES FORESTRY BOARD; STATE FORESTER APPOINTED; CHANGES SUSTAINED YIELD POLICY

*"Question:* Shall Forestry Board be reduced/restructured; timber sales vest exclusively in appointed State Forester; existing timber sustained yield policy changed?

*"Explanation:* Reduces Forestry Board from fifteen multi-interest members to nine. Three advisory members eliminated. Governor, not the Board, picks State Forester who shall have exclusive control/supervision of timber sales. Board given only policy making authority. Board's existing sustained yield policy requires management of state timber to avoid significant future harvest declines. Measure limits annual sales to maintainable level except where future yields are unaffected excluding common school lands. Creates four new management regions."

Petitioners main criticism of the draft certified by the Attorney General is that it "distorts the provisions and text of the proposed measure" by overstating some provisions, particularly by placing undue emphasis on the

"sustained yield provision."[2] They argue that this provision is overemphasized because the present State Forestry Board has existing, somewhat different, policies concerning "sustained yield" on most of the state's forest lands, although these are not imposed by a statute.

It is plainly impossible to set out both the changed timber sale policy and the changes in the administrative structure fully in the ballot title. Petitioners' challenge calls upon us to make two judgments: (1) whether some of the changes represent a greater departure from existing law than others, and (2) which changes are more important than others. These are judgments, not of accuracy or clarity, but of the relative weight and importance of different policy changes. They involve questions about the future effect of the measure, such as whether the board would retain or change its timber sale policies, whether the result would be different from the proposed statutory policy, and whether the State Forester would follow different policies made by the restructured board from those he follows under the supervision of the board as presently constituted.

These questions are not well suited for resolution under the assignment given this court by ORS 250.085. They are the responsibility of the Attorney General in the first instance. Where reasonable minds can differ about the relative importance of reorganizing the Department of Forestry on the one hand and placing a specified timber sale policy into law on the other hand, there is no reason to disturb his judgment on those issues.

A sentence-by-sentence comparison of the Attorney General's draft and the alternative proposed by petitioners shows that the main, though not the only, difference is in the sequence of propositions. For the reason

---

[2] Petitioners also cite ORS 250.055, which provides:

"For state measures, the Secretary of State by rule shall designate a test of readability and adopt a standard of minimum readability for a ballot title. The ballot title shall comply with the standard to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy."

ORS 250.085 does not make compliance with the Secretary of State's rule a ground for this court's changing a ballot title unless the challenged draft is "insufficient or unfair."

stated, we will not substitute our judgment for that of the Attorney General about the relative importance of these propositions.

One other difference is that the Attorney General's ballot title states that the measure "requires sustained yield management of state timber," and petitioners' alternative would state that the measure "changes sustained yield policy." The Attorney General's version is a correct statement. The alternative may also be a correct statement when the proposed measure is compared with the present board's current policy, as the explanation of the measure would state; however, the proposed alternative title could be read to imply that the measure changes a statutory policy, which it does not. We see no reason to substitute the alternative for the Attorney General's title.

Accordingly, we certify to the Secretary of State the ballot title and caption prepared by the Attorney General.