Argued and submitted January 8, Oregon Laws 1991, chapter 863, section 8, and
Oregon Laws 1991, chapter 752, sections 14 to 14e, are invalid as decided
October 29, 1992

# AUTOMOBILE CLUB OF OREGON
## and A & B Automotive & Towing Service, Inc.
*Petitioners,*

*v.*

# STATE OF OREGON,
*Respondent.*

## (SC S38565)

840 P2d 674

Don H. Marmaduke of Tonkon, Torp, Galen, Marmaduke & Booth, Portland, argued the cause for petitioners. With him on the briefs were Kurt W. Ruttum and Scott D. Eads.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Charles F. Hinkle, Portland, filed a brief in behalf of *amici curiae* Oregon Transit Association and Tri-County Metropolitan Transportation District of Oregon.

John D. Burns, Gregory A. Chaimov, and Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief in behalf of *amicus curiae* Oregon Petroleum Marketers Association.

Before Carson, Chief Justice, and Peterson, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

CARSON, C. J.

## CARSON, C. J.

At issue in this case is the constitutionality of two legislative enactments that fund projects designed to benefit Oregon's environment. Petitioners Automobile Club of Oregon (Oregon AAA) and A & B Automotive and Towing Service, Inc. (A & B), timely petitioned for review of ORS 319.025 (the underground storage tank assessment)[1] and ORS 468A.425 *et seq* (the emission fee).[2] Each legislative act conferred original-jurisdiction on this court to consider the petitions of any parties interested, affected, or aggrieved by that act.[3] Both parties have standing.[4]

---

[1] The underground storage tank assessment began as part of Senate Bill 1215, was adopted as Oregon Laws 1991, chapter 863, section 18, and is codified at ORS 319.025. It assesses a fee of a little more than a penny per gallon for the deposit of motor vehicle fuel into underground storage tanks when the fuel is stored for later resale. ORS 319.025. The revenues generated by the assessment are to be used to fund grants, loans, loan guarantees, and insurance premium copayments to retail gasoline stations so that those stations can bring their underground storage tanks into compliance with federal environmental regulations. *See* ORS 466.791 (establishing Underground Storage Tank Compliance and Corrective Fund) and notes following ORS 466.835 (detailing financial assistance programs for owners and operators of underground storage tanks).

[2] The emission fee began as part of House Bill 2175, was adopted as Oregon Laws 1991, chapter 752, sections 14 to 14e, and is codified at ORS 468A.425 to 468A.450. It assesses a $1 to $2 annual "emission fee" payable along with registration of certain motor vehicles. Revenues generated by the fees are to be used to fund projects aimed at improving air quality, particularly the development of public transportation. *See infra* section II.A. for details of the law.

[3] Oregon Laws 1991, chapter 752, section 14h, provides, in part:

"(2)(a) Jurisdiction to determine whether sections 14 to 14e of this Act impose a tax or excise levied on the ownership, operation or use of a motor vehicle that is subject to the provisions of section 3a, Article IX of the Oregon Constitution is conferred upon the Supreme Court. A petition for review shall be filed within 60 days only after the effective date of this Act [September 29, 1991]. Any person interested in or affected or aggrieved by sections 14 to 14e of this Act may petition for judicial review."

Oregon Laws 1991, chapter 863, section 20, provides, in part:

"(2)(a) Jurisdiction to determine whether section 18 of this Act imposes a tax or excise levied on, with respect to or measured by the extraction, production, storage, use, sale, distribution or receipt of oil, natural gas or motor vehicle fuel or levied on the ownership of oil or natural gas that is subject to the provisions of section 2, Article VIII or section 3a, Article IX of the Oregon Constitution is conferred upon the Supreme Court. A petition for review shall be filed within 30 days only after the effective date of this Act [September 29, 1991]. Any person interested in or affected or aggrieved by section 18 of this Act may petition for judicial review."

[4] Oregon AAA is affected, because its members pay the gasoline storage assessment indirectly and pay the emission fee directly, and because they are users of

Petitioners ask this court to declare that each challenged statute violates Article IX, section 3a, of the Oregon Constitution.[5] That section provides, in part:

"(1) Except as [otherwise provided], revenue from the following shall be used exclusively for the construction, reconstruction, improvement, repair, maintenance, operation and use of public highways, roads, streets and roadside rest areas in this state:

"(a) Any tax levied on, with respect to, or measured by the storage, withdrawal, use, sale, distribution, importation or receipt of motor vehicle fuel or any other product used for the propulsion of motor vehicles; and

"(b) Any tax or excise levied on the ownership, operation or use of motor vehicles."

Petitioners assert that (a) ORS 319.025 imposes taxes on motor vehicle fuel; (b) ORS 468A.425 *et seq* impose taxes or excises on motor vehicle use or operation; and (c) neither statute dedicates the proceeds of those taxes to the narrow list of highway purposes permitted by Article IX, section 3a.

To violate Article IX, section 3a, the statute must both be a tax (under subsection (1)(a)) or a tax or excise

---

the highways of this state, aggrieved by the dedication of proceeds from the assessment and fee to purposes other than those permitted for the state's Highway Fund. *See Rendler v. Lincoln Co.*, 302 Or 177, 728 P2d 21 (1986) (organization has standing if some of its members are affected). A & B is affected, because it is the owner of underground storage tanks from which motor vehicle fuels are sold to the public, because it owns vehicles subject to the emission fee, and because the assessments and fees will not be dedicated to the Highway Fund.

Oregon Petroleum Marketers Association (OPMA) filed an *amicus curiae* brief supporting the underground storage tank assessment. *Amici curiae* Oregon Transit Association and Tri-County Metropolitan Transportation District of Oregon (Tri-Met) filed a brief supporting the emission fee.

[5] Although the legislature also authorized a review of ORS 319.025 for conflict with Article VIII, section 2, petitioners present no argument, and we express no opinion, on that provision of the constitution. *See* Or Laws 1991, ch 863, § 20 (granting this court jurisdiction to consider Or Const, Art VIII, § 2).

Petitioners challenge the validity of the underground storage tank assessment under the equal privileges and immunities clause of the Oregon Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States. Our review in this proceeding is limited to an analysis of the law's validity under Article IX, section 3a, and Article VIII, section 2 of the Oregon Constitution. Or Laws 1991, ch 863, § 20.

(under subsection (1)(b)),[6] and the revenue must be dedicated to purposes other than those constitutionally specified. We will examine each provision to determine whether the revenue derived therefrom levies a tax (in the case of motor vehicle fuel storage charges) or a tax or excise (in the case of emission fees) before turning to an inquiry about whether it is dedicated to a proscribed use.

## I. THE UNDERGROUND STORAGE TANK ASSESSMENT

### A. Background

Following the adoption of new environmental regulations governing underground storage tanks, Oregon's retail gasoline station owners faced a potential crisis in 1991. Some legislators believed that, without state assistance, as many as half of the small, rural gasoline stations in this state would be forced to close. *See, e.g.,* Minutes, House Committee on Business and Consumer Affairs, June 4, 1991 (Exhibit D, Testimony of Senator Hill).

Senators Jim Hill and John Kitzhaber prepared a summary of the background of the provision later adopted as Oregon Laws 1991, chapter 863, section 18. That summary, set out below, was part of a letter requesting the Attorney General's opinion about the constitutionality of the proposal; it is part of the legislative record.

---

[6] Subsection (1)(a) restricts use of revenue from the imposition of a "tax," while subsection (1)(b) applies to the imposition of a "tax *or excise.*" (Emphasis added.) It could be argued that the former subsection implicitly permits the dedication to non-highway purposes of revenues raised from the imposition of an "excise," by omitting the parallel phrasing found in subsection (1)(b).

We reject that interpretation, because the term "tax" as used in subsection (1)(a) is intended to encompass "excise" as well. Were it otherwise, subsection (1)(a) would be meaningless. Within months of the adoption of Article IX, section 3a, an "excise tax" on motor vehicle fuel was imposed by Oregon Laws 1943, chapter 303, section 3. That tax was dedicated by section 29 of the same chapter to the state highway fund. Now codified at ORS 319.530, the excise tax continues to be levied on the sale of motor vehicle fuel, and revenues therefrom continue to be dedicated to highway purposes. Before 1943, Oregon had imposed a one-cent-per-gallon "license tax" on motor vehicle fuel, the proceeds of which were dedicated to highway purposes. Or Laws 1919, § 159. The drafters of Article IX, section 3a, stated in the 1942 Voters' Pamphlet that the provision was not intended to create new taxes or to change the distribution of fuel taxes, but rather to "make certain that the present policy of this state to use highway user funds for highway purposes will be continued."

"In late 1984, as part of the re-authorization of the Resource Conservation and Recovery Act, Congress passed national requirements affecting the underground storage of petroleum and other hazardous substances. Congress acted in response to increasing threats to the nation's groundwater and to public safety from fire and explosions, as a result of spills and leaks from underground storage tanks. Oregon's own experience with contaminated soil and groundwater and occasional public safety threats parallels the national experience.

"Based on this national legislation, the Environmental Protection Agency (EPA) adopted technical rules for new and existing tanks, financial responsibility rules and rules for State operation of the federal program. Compliance with technical standards for corrosion control, spill and overfill protection and leak detection is phased in between December 1989 and December 1998 depending on the age of the tank. Compliance with the financial responsibility requirement is phased in between January, 1989 and October 1991.[7] Because of insurance underwriting criteria that typically requires [*sic*] upgraded tanks and demonstration of a clean site, the financial responsibility deadlines are forcing businesses into an early decision on upgrades or site clean-up.

"In its fiscal and economic impact statement issued at the time of promulgation, EPA predicted that some 43 percent of all businesses with underground tanks would close because of the predicted compliance costs. What is now becoming clear, is that the closures are not, and will not, be random. Rather, smaller businesses in more rural locations are going to be closing in disproportionate numbers because of the inability to absorb new debt of the magnitude necessary to comply. Our own estimate is that as many as 1000 gasoline retailers may not have the financial capacity to comply with these federal mandates." Minutes, Senate Committee on Business, Housing & Finance, May 23, 1991 (Exhibit B, Letter from Senator Hill to then-Attorney General Dave Frohnmayer, at 3).

By adopting Oregon Laws 1991, chapter 863, section 18, the legislature ordered the state to collect an "underground storage tank assessment" from any person taking delivery, into an underground storage tank, of gasoline

---

[7] The deadline was later extended to December 31, 1993. 56 Fed Reg 66,369 (Dec. 23, 1991).

intended for resale. The word "tax" was avoided in the new law in an apparent effort to avoid conflict with the Oregon Constitution. *See* Or Laws 1991, ch 863, § 20(1) ("It is the intent of the Legislative Assembly that funds assessed pursuant to section 18 of this Act are not subject to the provisions of section 2, Article VIII or section 3a, Article IX of the Oregon Constitution."). Reviewing the application of Article IX, section 3a(1)(a), to the proposed assessment before the statute imposing it was adopted, the Attorney General opined that the assessment was not a tax for purposes of the constitutional provision, but warned that this conclusion was "not free from doubt." Letter of Advice dated May 20, 1991, to Senator Jim Hill (Op-6413).

### B.  Is The "Assessment" a "Tax"?

For its conclusion that the underground storage tank assessment was not a tax, the Attorney General's letter of advice relied on a distinction between taxes and assessments established by this court's interpretation of provisions of the Oregon Constitution other than those limiting fuel revenues to highway uses, namely provisions that require uniformity in taxation.[8] *Id.* We next consider whether the underground storage tank assessment is a tax and whether the distinction between taxes and assessments in the uniformity cases applies to Article IX, section 3a(1)(a).

In the most general sense, a tax is "any contribution imposed by government upon individuals, for the use and service of the state, whether under the name of toll, tribute, tallage, gabel, impost, duty, custom, excise, subsidy, aid, supply, or other name." Black's Law Dictionary 1457 (6th ed 1991). An assessment is a government fee imposed on owners of property to finance improvements or services directly

---

[8] Article I, section 32, requires uniformity of taxation. It provides:

"No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

Article IX, section 1, also requires uniformity. It provides:

"The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

benefiting that property; an assessment is exempt from constitutional limitations requiring that taxes be uniformly imposed so long as the financial burden and the private benefit are closely related. *King v. Portland*, 38 Or 402, 63 P 2 (1900), *aff'd*, 814 US 61, 22 S Ct 290, 46 L Ed 431 (1902).[9]

The language used in this court's decisions on assessments has evolved to suggest that, in the uniformity context, an assessment is not a tax at all. *Compare Sproul v. State Tax Com.*, 234 Or 579, 383 P2d 754 (1963) (fire protection assessments on forest lands exempt from uniformity limitations because not an exercise of state's "taxing power"), *with Dennehy v. Dept. of Rev.*, 305 Or 595, 604 n 3, 756 P2d 13 (1988) (disapproving distinction for these purposes between state's "taxing power" and "police power" and focusing, instead, on "whether a law imposes a 'tax' within the meaning of constitutional rules governing taxation").

■ Petitioners, the state, and *amici* have presented extensive arguments about whether attributes of the underground storage tank assessment align burdens and benefits closely enough to support a "special assessment" label. Although the "assessment" label may well be accurate, we decline to apply the distinction found in the context of the uniformity clauses to the context of Article IX, section 3a.

■ Article IX, section 3a, and its pre-1980 predecessor, *former* Article IX, section 3, were adopted to ensure that revenue from motor vehicles and motor vehicle fuel would be devoted solely to specified highway purposes.[10] The purpose

---

[9] In *King v. Portland*, 38 Or 402, 418, 63 P 2 (1900), this court distinguished taxes from assessments for street improvements, stating that taxes are for the benefit of the general public, but assessments are for local improvements and

"are made and sustained upon the assumption that a prescribed portion of the community is to be especially benefited, in the enhancement of the value of the property peculiarly situated as regards the proposed expenditure of the funds to be raised by the assessment. It is but a demand of simple justice that special contributions in consideration of special benefits should be made by those receiving the benefits, but such contributions ought not, by the same demand of justice, to be enforced in any case beyond the benefits received: Cooley, Tax'n (2 ed.), 606. Such an assessment is not in conflict with the provision of our state constitution requiring that 'all taxation shall be equal and uniform'[.]"

[10] Article IX, section 3a, was created through SJR No. 7 (1979) and adopted by the people May 20, 1980. It amended *former* Article IX, section 3, which restricted uses of motor vehicle and motor vehicle fuel revenues to highway purposes, by

of Article IX, section 3a, is to prevent revenue raised from taxes related to motor vehicles and motor vehicle fuel from being diverted to impermissible non-highway purposes. *Rogers v. Lane County*, 307 Or 534, 541, 771 P2d 254 (1989) ("In short, this constitutional amendment made it clear and unambiguous that the people of Oregon wanted monies derived from taxes and fees on motor vehicles and motor vehicle fuels to be used only for highway purposes"). We hold that the underground storage tank assessment is a "tax" under Article IX, section 3a(1)(a), and that, no matter what label the legislature may attach to a tax on motor vehicle fuel, whether it be "fee," "excise," "tithe," "assessment," or some other term, the revenues derived therefrom must be dedicated to the listed purposes.

A case deciding whether an assessment was a tax under a funding-dedication provision comparable to Article IX, section 3a, supports our conclusion. In *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 648 P2d 1284 (1982), this court interpreted Article VIII, section 2, the constitutional provision committing taxes measured by the sale of natural gas and oil to the Common School Fund, and Article IX, section

---

eliminating "funding of police, parks, scenic and historic places." 1980 Voters' Pamphlet.

The original constitutional reservation of revenue from taxes or excises related to motor vehicles or motor vehicle fuel dates back to 1942, when SJR No. 11 (1941) was approved by the electorate. The 1942 Voters' Pamphlet statement advocating that provision stated:

"This principle that highway taxes should be applied solely to highway uses is not new. It was the very basis of the argument for the adoption of the first gasoline tax ever passed, namely our own enacted in 1919. In fact, it was never seriously questioned before the early nineteen thirties when some states, instead of putting their houses in order and meeting their financial emergencies by levying the necessary taxes on all taxpayers, found it easier to raid the highway funds or raise the gasoline tax or the registration fee or both, and divert the proceeds to other purposes, such as in one state, for oyster propagation!

"* * * * *

"* * * And all of us see quite clearly that our highways and roads need additions and improvements; that we need safer roads, divided highways, freeways in congested areas, grade separations, more and wider bridges if we are to relieve congestion and reduce the appalling and growing number of accidents.

"* * * * *

"So pronounced is the sentiment against diversion of highway funds that the people of many states * * * have prohibited it by constitutional amendments. Such amendments effectuate a basic democratic principle, that of direct control by the people, insofar as is reasonable, of the expenditure of tax monies."

3b, the constitutional provision limiting the permissible amount of such taxes. The 1971 legislature had authorized the Department of Energy (DOE) to fund its operation by assessing fees against energy resource suppliers on an energy-resources-sold basis. In 1980, the electorate voted to adopt a constitutional amendment, adding Article VIII, section 2, and Article IX, section 3b. When the 1981 legislature provided authority to DOE to continue to assess the energy supplier fees as before, it provided for direct judicial review of whether the assessment ran afoul of the 1980 constitutional amendments. On review, this court held that the DOE assessments, despite their "assessment" label, were indeed taxes subject to Article VIII, section 2, and Article IX, section 3b, of the Oregon Constitution. 293 Or at 383-84.

The "assessment" (rather than "tax") label attached by the legislature to the charge for filling an underground storage tank, like the label attached to the DOE assessments in *Northwest Natural Gas Co. v. Frank, supra,* is important but not dispositive on the issue of whether that assessment is a tax under Article IX, section 3a. *See Sproul v. State Tax Com., supra,* 234 Or at 581 ("The label the legislature places on a levy is an important factor to be considered in determining into what category to place the levy. However, such a label is not conclusive of the nature of the levy."). This court decided in *Northwest Natural Gas Co. v. Frank, supra,* that a fee imposed by government may be a "tax" in certain constitutional contexts despite the fact that the fee is called an "assessment" and that it burdens those benefited.

The clear purpose of Article IX, section 3a(1)(a), is to prevent diversion from the Highway Fund of money raised from burdens imposed on motor vehicle fuel. Article IX, section 3a, refined and restricted *former* Article IX, section 3, which, according to one description in the 1942 Voters' Pamphlet, was intended to "effectuate a basic democratic principle, that of direct control by the people, insofar as is reasonable, of the expenditure of tax monies." The people of Oregon have directed that *all* government revenues from motor vehicle fuel taxes be expended for specified highway purposes; we must honor that direction.

The underground storage tank assessment is measured by the receipt of motor vehicle fuel into storage tanks.

The limitations of Article IX, section 3a(1)(a), apply to "*[a]ny tax* levied on, with respect to, or *measured by* the storage, withdrawal, use, sale, distribution, importation or *receipt of motor vehicle fuel*." (Emphasis added.) We conclude that, despite the "assessment" label attached to the levy, the underground storage tank assessment is a tax on motor vehicle fuel (a "gasoline tax") under Article IX, section 3a(1)(a).

The next step in our analysis is to determine whether ORS 319.025 dedicates the proceeds of the gasoline tax to those uses permitted by Article IX, section 3a.

### C.  Permissibility of Intended Use

The funds raised from the tax levied in ORS 319.025 are dedicated to the Underground Storage Tank Compliance and Corrective Action Fund created under ORS 466.791. That fund, administered by the Department of Environmental Quality, is earmarked for programs providing grants, loans, loan guarantees, interest rate subsidies, and insurance premium copayments to owners of underground storage tanks. ORS 466.791(5).

The legislative purpose in levying the assessment was to maintain public access to gasoline fuel in rural Oregon by ensuring that the owners of rural gasoline stations received financial assistance to comply with increasingly stringent federal environmental regulations. The bill's sponsor explained:

> "Today Oregonians face what could be a significant crisis. The Environmental Protection Agency has set certain requirements on all the retail deliverers of petroleum throughout the entire country. If we in Oregon do not do something now, as many as fifty percent of all the retail gas stations that were * * * in our home towns and along the freeways will be closed because they will be unable to meet those requirements." Minutes, House Committee on Business & Consumer Affairs, June 4, 1991 (Exhibit D, Testimony of Senator Jim Hill).

The state and *amicus* Oregon Petroleum Marketers Association (OPMA) contend that those purposes are permissible under Article IX, section 3a, because they fund the "improvement[,] * * * operation and use of public highways."

*See* Or Const, Art IX, § 3a (listing these and other permissible uses). This court closely examined the quoted language in *Rogers v. Lane County, supra,* interpreting it to permit funding of "other projects or purposes within or adjacent to a highway, road, street or roadside rest area right-of-way that primarily and directly facilitate motorized vehicle travel." 307 Or at 545.[11]

The argument of the state and *amicus* OPMA is that gasoline stations are adjacent to highways and that the funded projects will keep the stations from closing, thus facilitating motor vehicle traffic. According to the state, "[a]bsent the action of the 1991 legislature in enacting SB 1215, motorists in Oregon would have been faced with the prospect of not being able to use the state's highways and roads due to a dearth of gas stations and a lack of available fuel." *Amicus* OPMA points out: "Motorists cannot use the state's roads without motor fuel." It is true that gasoline stations are necessary to the use of highways, but so are automobile repair shops and businesses selling batteries, tires, mufflers, and the like. The people, in adopting Article IX, section 3a, surely did not consider support of gasoline stations any more a highway purpose than support of automobile repair or tire sale businesses or, for that matter, roadside cafes and motels.

■ We construe Article IX, section 3a, narrowly.[12] All funds from the new gasoline tax are dedicated to the Underground Storage Tank Compliance and Corrective Action Fund described in ORS 466.791. We conclude that the expenditures authorized in ORS 466.791 are not permissible under Article IX, section 3a. The fund clearly does not provide for

---

[11] The state urges the court to adopt the broader standard proposed by the dissent in *Rogers v. Lane County,* 307 Or 534, 553, 771 P2d 254 (1989): whether a project "improves the operation and use of a highway, road, street, or roadside rest area." (Linde, J., dissenting.) For the reasons stated by the majority opinion in that case, we decline to do so.

[12] When *former* Oregon Constitution, Article IX, section 3 (subsequently replaced by present section 3a), was adopted in 1942, the provision "made it clear and unambiguous that the people of Oregon wanted monies derived from taxes and fees on motor vehicles and motor vehicle fuels to be used only for highway purposes." *Rogers v. Lane County, supra,* 307 Or at 541. In 1980, voters approved what is now Article IX, section 3a, further restricting permissible purposes for such taxes. As this court concluded in *Rogers,* the drafters "clearly intended a narrow application of this new constitutional provision to the specific purposes stated." *Id.* at 545.

construction, improvement, repair, maintenance, or use of highways. Neither does it fall within the meaning that this court has attached to "operation and use" of a highway, *viz.*, it does not "primarily and directly facilitate motorized vehicle traffic." *See Rogers v. Lane County, supra*, 307 Or at 545 (stating the test). The fund facilitates motorized vehicle traffic only tangentially; its primary beneficiaries are not users of highways but owners of gasoline stations.

We conclude that the underground storage tank assessment established in ORS 319.025 is an unconstitutional tax.[13]

## II. THE EMISSION FEE

### A. *Background*

The emission fee imposed by ORS 468A.435 was enacted by the 1991 legislature as part of House Bill 2175. Or Laws 1991, ch 752. As the state describes it, HB 2175 was "a broad-based response to the problems of air pollution in this state and to the imperatives of federal legislation requiring the states to take action to remedy air pollution problems." The Legislative Assembly declared that the purposes of the Act were to:

"(1)   Insure that the state meets its minimum obligations under the Clean Air Act Amendments of 1990.

"(2)   Avoid direct regulation of industrial sources of air pollution through a Federal Government administered permit program.

"(3)   Prevent imposition of Clean Air Act sanctions which would impound federal highway funds appropriated for the state and increase emission offset requirements for new and expanding major industrial sources of air pollution.

"(4)   Provide adequate resources to fully cover the costs of the Department of Environmental Quality to develop and administer an approvable federal operation permit program in accordance with the Clean Air Act, including costs of

---

[13] The statute will be repealed by operation of law. Or Laws 1991, ch 863, § 21. An alternative funding mechanism for the Underground Storage Tank Compliance and Corrective Action Fund, described in sections 23 through 31 of the Act, will become operative on the date that the appellate judgment is entered in this matter. *Id.* at § 22.

permitting, compliance, rule development, emission inventorying, monitoring and modelling and related activities." Or Laws 1991, ch 752, § 2.

Finding that the effects of motor vehicle emissions on air quality could be ameliorated by public transportation, development of alternative fuels, carpools, vanpools, and other measures, ORS 468A.425(3), the legislature earmarked fees imposed at the time of vehicle registration to the Department of Transportation Public Transportation Development Fund. ORS 468A.440(2). *See* ORS 184.733 (establishing and describing purposes of the fund).

### B. Is the Fee a "Tax or Excise"?

■ Article IX, subsection 3a(1)(b), dedicates to highway purposes the revenue derived from "[a]ny tax or excise levied on the ownership, operation or use of motor vehicles." The broad legislative intent that we recognized in the context of subsection 3a(1)(a) applies with equal force to subsection 3a(1)(b).

■ Accordingly, we interpret the term "tax," which is discussed above with respect to subsection 3a(1)(a), the same in the context of subsection 3a(1)(b). An "excise" is "[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." Black's Law Dictionary 563 (6th ed 1991); *see Pacific First Federal v. Dept. of Rev.*, 308 Or 332, 779 P2d 1033 (1989) (corporate excise tax is a privilege tax exacted for the privilege of earning a net income in this state); *Eugene Theatre v. Eugene*, 194 Or 603, 629, 243 P2d 1060 (1952) (a municipal occupation tax is an excise). A tax on use or operation of motor vehicles ordinarily is properly deemed an excise, because it taxes the enjoyment of a privilege.

The state asserts that the emission fee is not a "tax or excise" on the use or operation of motor vehicles. Instead, the state characterizes the emission fee as a graduated charge for pollution of the airshed, based on the year of manufacture of a vehicle.[14] This position is consistent with the Legislative

---

[14] Owners of vehicles manufactured in the 1981 model year or later are assessed $1 per year, while owners of older vehicles are assessed $2 per year. ORS 468A.435. The legislature apparently presumed that older vehicles pollute more than newer ones.

Assembly's assertion in the challenged Act that *"[a]n emission fee* based on the amount of pollutants emitted by motor vehicles *is not a tax or excise* on the ownership, operation or use of motor vehicles." ORS 468A.425(6). (Emphasis added.)

As we concluded in our discussion of the distinction between assessments and taxes, *ante*, the character of a levy is determined by its function, not by the label the legislature attaches to it. *See Dennehy v. Dept. of Rev., supra*, 305 Or at 604 (stating the rule); *Sproul v. State Tax Com., supra*, 234 Or at 581 (same).

The emission fee is to be collected at the time certain vehicles are registered or when registration is renewed. ORS 468A.440. Although payment of the fee is not a condition of registration, a civil penalty may be assessed for non-payment of the emission fee. ORS 468A.430. Only vehicles registered under ORS 803.420(1) (passenger cars) are assessed the fee. ORS 468A.430(1).[15] Graduation of the fee, with older vehicles assessed more than newer ones, does not persuade us that the fee is a "special assessment" unrelated to registration. *See Sproul v. State Tax Com., supra* (discussing requisites of special assessments).

Registration is intrinsically and necessarily a requisite of the "ownership, operation or use of motor vehicles." *See* ORS 803.300 (registration is requisite of owning a vehicle in this state; failure to register is a Class C traffic infraction). We hold that the emission fee is a "tax or excise levied on the ownership, operation or use of motor vehicles" under Article IX, section 3a(1)(b), of the Oregon Constitution. We reach the same conclusion by accepting the state's characterization of the emission fee as a charge for polluting the airshed, because polluting the airshed is an inescapable incident of the operation or use of motor vehicles, and a state-imposed "fee" or "charge" for operating or using a vehicle is a tax or excise on its operation or use for purposes of Article IX, subsection 3a(1)(b).

---

[15] By implication, mopeds, motorcycles, government-owned vehicles, antique automobiles, farm vehicles, and motor homes will not be assessed an emission fee, nor will commercial trucks and buses. *Amici* suggest that this is reasonable because, according to some researchers, of all air pollution, passenger automobiles create 35 percent while all other vehicles combined create only about 1 percent.

## C.  Permissibility of Intended Use

The uses established for the Public Transportation Development Fund are many. The state and *amici* Oregon Transit Association and Tri-Met urge that at least some of them are permissible purposes under Article IX, section 3a. For instance, they urge that transportation demand management projects[16] supported by the fund are for the "improvement, * * * operation and use" of highways, as this court construed that phrase in *Rogers v. Lane County, supra.* They appear to concede that other projects funded by the emission fee (*e.g.*, research into alternative fuels and acquisition of buses) are impermissible unless this court adopts a broader test, such as the one proposed by the dissent in *Rogers, viz.,* "improves the operation and use of a highway, road, street, or roadside rest area." 307 Or at 553. As noted earlier in this opinion, we decline to adopt a new test.

■      Under the existing test, we conclude that the majority of public transportation projects to be funded by the emission fee are impermissible. As petitioners point out, the people of this state on three separate occasions have considered and rejected proposals to amend Article IX, section 3a, to fund public transportation by motor vehicle fuel and/or registration taxes.[17] We will not do by reconstructive interpretation what the drafters did not do and what the electorate has declined to do.

■      When some proposed uses of the emission fee are permissible and some are not, we will not redraft the statute to save the permissible uses. *See Northwest Natural Gas Co. v. Frank, supra,* 293 Or at 381 (role of court is to interpret, not redraft, statutes). We hold that ORS 468A.425 to 468A.450, the 1991 statutes imposing an emission fee on

---

[16] ORS 184.730(6)(a) defines "transportation demand management projects":

"Transportation demand management projects are measures to reduce traffic congestion and travel by single occupant automobiles including but not limited to carpool, vanpool, buspool, park-and-ride facilities, parking management, high occupancy vehicle lanes, bus by-pass lanes, flexible hours of employment, work trip reduction programs and incentives to use public transportation."

[17] Measure 2, defeated May 28, 1974; Measure 4, defeated May 25, 1976; Measure 1, defeated May 15, 1990.

certain motor vehicles, violate Article IX, section 3a, of the Oregon Constitution and thus are invalid.

## III. CONCLUSION

The underground storage tank assessment is a "tax" and the vehicle emission permit fee is a "tax or excise." The purposes to which the legislature would have dedicated the funds raised by the challenged provisions, no matter how laudable, are constitutionally impermissible. The provisions adopted as Oregon Laws 1991, chapter 863, section 18, and codified as ORS 319.025, and those adopted as Oregon Laws 1991, chapter 752, sections 14 to 14e, and codified as ORS 468A.425 to 468A.450, violate Article IX, section 3a, of the Oregon Constitution and, therefore, are invalid.