Rhonda BERNARD,
*Petitioner,*

*v.*

Phil KEISLING,
Secretary of State,
*Respondent.*

(SC S40549)

858 P2d 1309

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the petition for petitioner.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.,

In this original proceeding, petitioner challenges a ballot title certified by the Attorney General to the Secretary of State. *See* ORS 250.085(2) (providing procedure). Pursuant to ORS 250.067(1), petitioner had submitted to the Secretary of State timely written comments on the earlier, proposed ballot title and, therefore, is entitled to bring this challenge to the certified ballot title. ORS 250.085(2). On review, we approve the ballot title certified by the Attorney General.

The operative section of the proposed initiative measure provides as follows:

"Chemical Process Mine License Fee

"(1) Every person who engages in or carries on the business of working or operating any chemical process mine or mining property in the state of Oregon from which gold, silver, copper, lead, or any other metal or metals of any kind shall be mined, extracted, or produced, whether such person shall carry on such business or engage in such work or operations as owner, lessee, trustee, possessor, receiver, or any other capacity, must for each year when engaged in or carrying on such business, work, or operations pay to the Oregon Department of Revenue for the exclusive use and benefit of the state of Oregon a license fee for engaging in and carrying on such business, work, or operations in this state.

"(2) The annual license fee to be paid by a person engaged in or carrying on the business of working or operating any chemical process mine or mining property in this state from which gold, silver, copper, lead, or any other metal or metals are produced shall be an amount computed on the gross value of product which will be derived by the person from mining business, work, or operation within this state. The chemical process mine license fee shall be collected quarterly, in advance, based on an estimate of the gross value of product as follows:

| "Gross Value of Product | Fee (Percentage of gross value) |
| --- | --- |
| "First $250,000 | 0% |
| more than $250,000 | 2.0% |

"(3) Chemical process mine license fees collected under the provisions of this part are allocated as follows:

"(a) to the state Habitat Conservation Fund of the Resource Conservation Sinking Fund pursuant to ORS 468.664 for habitat protection and restoration, 75% of total collections each year; and

"(b) to a Mining Community Impact Trust Fund, to be established and administered by the Oregon Department of Economic Development for community grants for infrastructure needs and to mitigate rapid unemployment and other social changes associated with closure of chemical process mining operations, as identified by the socioeconomic impact analysis prepared pursuant to ORS 517.980, 25% of total collections each year."

The Attorney General certified the following ballot title to the Secretary of State for that proposed initiative measure:

### "AMENDS CHEMICAL PROCESS MINING LAWS: ADDS REQUIREMENTS, PROHIBITIONS, STANDARDS, FEES

"*Question*: Shall chemical process mining laws be amended, adding operating and reclamation requirements, banning certain practices, imposing fees, ending tax credit?

"*Summary*: Amends chemical process mining laws. Bans chemical releases into environment. Requires using best readily obtainable technology, including liner and leak detection systems. Adds to wildlife protection requirements. Adds to mine reclamation standards, including backfilling of open pits with detoxified materials. Bans 'in situ' mining. Bars permit unless applicant has satisfactory compliance with closure history with other operations. Operator's bond must cover perpetual site care, monitoring. Repeals pollution control tax credit for chemical process mines. Imposes mineral extraction fee, used for habitat protection, mining community grants."

Under ORS 250.085(4), we review ballot titles for substantial compliance with the requirements of ORS 250.035 and 250.039.[1] Petitioner argues that the Caption

---

[1] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

does not reasonably identify the subject of the measure and that the Question does not plainly phrase the measure's chief purpose, in that both refer to "fees" rather than to "taxes." Petitioner asserts that, because the measure imposes a revenue requirement designed to raise money for public purposes and not for the costs of regulation, the measure would impose a *tax* on extractions, not a *fee*. Petitioner asks this court to modify the Caption and Question by substituting the word "taxes" for the word "fees" in the Caption and Question of the ballot title. Petitioner does not challenge the Attorney General's proposed Summary.

The Attorney General argues that the words of the measure consistently refer to the imposition of a license "fee" and that this court has held that, generally, and in the absence of a compelling reason to the contrary, the Attorney General should use the words of the measure. *See Sampson v. Roberts*, 309 Or 335, 340, 788 P2d 421 (1990) (so holding). Petitioner responds that this court's holding in *Sampson* does not apply to the Caption and Question of a ballot title, but only to the Summary. Having made that response, however, petitioner advances no argument as to why the rule should be different for different parts of the ballot title, and we can think of none.

The Attorney General further argues that the question whether the proposed measure imposes a "fee" or a "tax" calls for interpretation of the measure, and a ballot title challenge is not the appropriate forum for deciding legal issues requiring interpretation of a proposed measure. This court has held that, if a measure is enacted into law, the court may later be required to decide the meaning and significance of words used in the measure and, therefore, that it generally is inappropriate for the court to do so in a ballot title proceeding. *Hand v. Roberts*, 309 Or 430, 438, 788 P2d 446 (1990) ("This court * * * assiduously attempts to avoid deciding questions of interpretation of the practical effect of initiative * * * measures in its review of a certified ballot title.");

---

"(c)  A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

Petitioner makes no argument under ORS 250.039 (readability test). We therefore do not address it.

*Aughenbaugh v. Roberts*, 309 Or 510, 516, 789 P2d 656 (1990) (same); *Sampson v. Roberts, supra,* 309 Or at 339 (same).

Petitioner relies primarily on *Automobile Club v. State of Oregon*, 314 Or 479, 489, 840 P2d 674 (1992) (underground storage tank assessment and motor vehicle emission fee were "taxes" for purposes of constitutional provision requiring that motor vehicle revenues and motor vehicle fuel revenues be used for specified highway purposes). Petitioner's reliance on *Automobile Club* is misplaced. That case was not a challenge to a ballot title. Although it was concerned with whether a certain exaction was a "tax," the answer given in that context does not necessarily determine the nature of the charge imposed by the initiative measure at issue here. As noted, whether the charges imposed here are taxes for any particular purpose is an issue of statutory interpretation that normally lies outside the proper scope of a ballot title review proceeding.

We have considered petitioner's arguments. We conclude that the ballot title certified by the Attorney General substantially complies with the requirements of ORS 250.035(1). Substantial compliance is all that the statute requires. ORS 250.085(4). *See Crumpton v. Keisling*, 317 Or 322, 325-26, 855 P2d 1107 (1993) (the court's function is to review for substantial compliance with ORS 250.085(4), not to determine whether a petitioner's proposed title is better). In summary, we reject petitioner's argument that we should substitute the word "taxes" for the word "fees" in the Caption and Question.

We recognize that the potential exists for the proponents of an initiative measure either intentionally or unintentionally to use words in the measure that obfuscate the subject, chief purpose, summary, or major effect of the measure. In reviewing the ballot title certified by the Attorney General, this court will not hesitate to go beyond the words of the measure where such an outcome has occurred. The law does not require that the certified ballot title use only the words that appear in the measure itself. The overriding requirement is that the ballot title substantially comply with the requirements of ORS 250.035. Somewhere along the continuum between a certified ballot title that clearly meets

the requirements of ORS 250.035 and one that clearly is statutorily deficient, this court may be required to determine whether its preference for the use of the words of the measure itself is not in harmony with this court's statutory obligation to review the title for "substantial compliance" with the requirements of ORS 250.035 and 250.039. In such a case, the court will not hesitate to modify a certified ballot title, in whole or in part, to satisfy its statutory function on review.[2] As already explained, however, this is not such a case.

Ballot title certified. This decision shall become effective pursuant to ORAP 11.30(10).

---

[2] *See, e.g., Mabon v. Keisling,* 317 Or 406, 412, 856 P2d 1023 (1993) (use of actual words of measure in the Caption would do little to inform voters of the measure's subject); *Arenz v. Keisling,* 316 Or 136, 140, 849 P2d 521 (1993) (Graber, J., dissenting) (mere repetition of the words of the proposed measure itself does not satisfy statutory standard of review); *Aughenbaugh v. Roberts,* 309 Or 510, 513 n 3, 789 P2d 656 (1990) (words substituted for some language in the measure); *Reed v. Roberts,* 304 Or 649, 748 P2d 542 (1988) (same); *but see Oregon Taxpayers Union v. Paulus,* 296 Or 476, 480-81, 676 P2d 305 (1984) (deferential standards of review announced and applied); *Christie v. Paulus,* 292 Or 344, 348-49, 638 P2d 478 (1982) (drafting is the responsibility of the Attorney General in the first instance).