[No. 85971-0.   En Banc.]
Argued June 14, 2012.     Decided October 4, 2012.

AUTOMOTIVE UNITED TRADES ORGANIZATION ET AL., *Appellants*, v.
THE STATE OF WASHINGTON ET AL., *Respondents*.

538

*Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge/ Fitzpatrick*), for appellants.

*Robert M. McKenna, Attorney General, Anne E. Egeler, Deputy Solicitor General, David M. Hankins, Senior Counsel,* and *Laura J. Watson* and *Kelly T. Wood, Assistants,* for respondents.

¶1 J.M. JOHNSON, J. — The Automotive United Trades Organization (AUTO) and Tower Energy Group bring an as-applied state constitutional challenge to a tax based on the possession of petroleum as a hazardous substance.[1] AUTO and Tower claim that the hazardous substances tax (HST), found in RCW 82.21.030, violates article II, section 40 of the state constitution because the revenue from motor vehicle fuel is not being "placed in a special fund to be used exclusively for highway purposes." WASH. CONST. art. II, § 40. The trial court held on summary judgment that AUTO's claim was barred because it was not filed within a reasonable time under the Uniform Declaratory Judgments Act (UDJA) (chapter 7.24 RCW) and that the HST does not violate article II, section 40.

¶2 We reverse in part and affirm in part. We reverse the trial court in barring AUTO and Tower from bringing their constitutional challenge because to do so would deprive this

---

[1] Taxes imposed on other hazardous substances apart from motor vehicle fuel are not challenged as a part of the present lawsuit.

court of its vested power to determine the constitutionality of specific legislation. We affirm the trial court, however, in granting summary judgment to the State because article II, section 40 provides that "this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes." WASH. CONST. art. II, § 40.

### FACTS AND PROCEDURAL HISTORY

██ ¶3 Washington voters approved Initiative 97 in 1988. This initiative enacted the Model Toxics Control Act (MTCA), chapter 70.105D RCW, and created the HST to fund the implementation of the MTCA. The MTCA governs the investigation and cleanup of toxic substances that have contaminated various locations within the state. The HST is imposed on the first in-state possession of any toxic substance, including motor vehicle fuel, and is assessed at a rate of seven-tenths of one percent multiplied by the wholesale value of the substance. RCW 82.21.030, .020(1)(d), (2). The revenue from the HST is deposited in the toxic controls accounts and is not used for highway purposes but rather for the cleanup of hazardous substances. *See* RCW 82.21-.030(2); RCW 70.105D.070. The HST has generated approximately $135 million in revenue as of June 2008 to the state and local toxic control accounts. There are no disputed issues of material fact, and this case primarily involves issues of constitutional interpretation.

¶4 AUTO negotiated a legislative alternative to the MTCA that appeared on the same ballot as Initiative 97, but AUTO decided not to challenge the tax at that time. In 2010, however, AUTO filed a lawsuit in King County Superior Court challenging the HST as unconstitutional, and the case was initially dismissed for lack of standing. AUTO then urged the attorney general to take action against the alleged constitutional violation, and the attorney general's office declined AUTO's request. After joining

Tower as a plaintiff in an effort to assert taxpayer standing, AUTO filed another challenge to the HST under the UDJA in King County Superior Court. Both parties filed cross motions for summary judgment, and the trial court granted summary judgment to the State. The trial court held that AUTO's claim was barred by the doctrine of reasonable time under the UDJA, or by laches, because of a 22-year delay in filing its complaint. The trial court also held that the HST does not violate article II, section 40 of the Washington Constitution. AUTO then filed a notice of appeal directly with this court, which was granted.

ANALYSIS

¶5 The appropriate standard of review for an order granting or denying summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "A motion for summary judgment is properly granted where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003) (alteration in original) (quoting CR 56(c)). Additionally, "[t]he constitutionality of a statute is a question of law which is reviewed de novo." *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999).

A. Reasonable Time or Laches

¶6 The State contends that AUTO and Tower have not brought a timely lawsuit because they were aware of the tax when it passed in 1988, they negotiated an alternative tax to the HST, and they deliberately chose not to challenge the HST after it was approved by voters. The basic argument is that the lawsuit is untimely because (1) it was not filed within a reasonable time under the UDJA or (2) it is barred by the doctrine of laches.

¶7 The UDJA does not have an explicit statute of limitations, but lawsuits under the UDJA must be brought

within a "reasonable time." *Brutsche v. City of Kent*, 78 Wn. App. 370, 376-77, 898 P.2d 319 (1995). This court has never applied the "reasonable time" standard to actions under the UDJA, but we have applied it in cases involving writs of certiorari.[2] "Laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay."[3] *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 241, 88 P.3d 375 (2004).

■ ■ ¶8 Even if AUTO and Tower waited 22 years to bring their lawsuit, the reasonable time and laches doctrines still cannot be used as affirmative defenses to bar a constitutional challenge. One rationale for this conclusion is that it would be a violation of separation of powers to allow the political branches of government to determine the time frame in which constitutional challenges can be brought under the UDJA. Another reason is that our own interpretation of reasonable time or our common law doctrine of laches should not be used to shirk this court's responsibilities of constitutional interpretation. *See Wash. State Legislature v. Lowry*, 131 Wn.2d 309, 320, 931 P.2d 885 (1997) ("[O]ur mandate as the Supreme Court of Washington [is] to decide whether legislative designation of sections is true to the spirit of the constitution.").[4] Furthermore, challenges to

---

[2] *See, e.g., Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 847, 991 P.2d 1161 (2000); *Akada v. Park 12-01 Corp.*, 103 Wn.2d 717, 718-19, 695 P.2d 994 (1985).

[3] Earlier versions of the laches defense consisted of three elements: "(1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay." *Buell v. City of Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972).

[4] The United States Supreme Court has said the following with respect to its equivalent role:

No doubt the political branches have a role in interpreting and applying the Constitution, but ever since *Marbury [v. Madison*, 5 U.S. (Cranch) 137, 2 L. Ed. 60 (1803),] this Court has remained the ultimate expositor of the constitutional text. As we emphasized in *United States v. Nixon*, 418 U. S. 683, 703, [94 S. Ct. 3090, 41 L. Ed. 2d 1039] (1974) [(quoting *Marbury*, 5 U.S. (Cranch) at 177)]: "In the performance of assigned constitutional duties each branch of the Govern-

unconstitutional legislation have never been subject to a limitations period. *See, e.g., DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 960 P.2d 919 (1998) (holding the statute of repose in medical malpractice claims to be unconstitutional 20 years after the legislation was enacted); *Viking Props., Inc. v. Holm*, 155 Wn.2d 112, 117, 118 P.3d 322 (2005) (holding racially restrictive covenants unenforceable and in violation of the United States Constitution even though suit was brought over 60 years after the covenants attached to the property). Thus, AUTO and Tower's constitutional challenge should not be barred by failure to bring the action in a reasonable time or because of laches.

## B. Article II, Section 40 of the Washington Constitution

¶9 Article II, section 40 of the Washington Constitution provides:

> All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes.

Additionally, article II, section 40 also provides

> [t]hat this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles.

---

ment must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others. . . . Many decisions of this Court, however, have unequivocally reaffirmed the holding of *Marbury* that '[i]t is emphatically the province and duty of the judicial department to say what the law is.' "

*United States v. Morrison*, 529 U.S. 598, 616 n.7, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) (some alterations in original).

AUTO and Tower challenge the HST as a violation of article II, section 40 because the revenue from first in-state possession of motor vehicle fuel is not used for highway purposes. The HST statute provides:

(1) A tax is imposed on the privilege of possession of hazardous substances in this state. The rate of the tax shall be seven-tenths of one percent multiplied by the wholesale value of the substance.

(2) Moneys collected under this chapter shall be deposited in the toxics control accounts under RCW 70.105D.070.

(3) Chapter 82.32 RCW applies to the tax imposed in this chapter. The tax due dates, reporting periods, and return requirements applicable to chapter 82.04 RCW apply equally to the tax imposed in this chapter.

RCW 82.21.030. The HST statute allows an exemption for "[a]ny successive possession of a previously taxed hazardous substance." RCW 82.21.040(1). Furthermore, the HST statute defines hazardous substances as including any kind of petroleum product, such as motor vehicle fuel. RCW 82.21.020(1)(b).

¶10 AUTO and Tower contend that the HST is a violation of article II, section 40 of the Washington Constitution because the HST is essentially a gas tax that may not be used for anything other than highway purposes. They urge us to resist the State's argument that the proviso at the end of article II, section 40 allows the legislature to "levy any excise tax on motor vehicle fuel that it [chooses] and spend the funds on any purpose." Br. of Appellants at 12. AUTO and Tower argue that the taxation scheme at the time of article II, section 40's passage should govern our interpretation. At that time, there was the gas tax, the motor vehicle excise tax (MVET), and the business and occupation (B&O) tax. Revenues from the gas tax were all required to be used for highway purposes after the passage of article II, section 40, and none of the revenues from the MVET or B&O tax were ever required to be used for highway purposes. Accordingly, AUTO and Tower contend that the proper inquiry is to

determine whether the HST more closely resembles the gas tax or the MVET or B&O tax. If the HST more closely resembles the former, then the funds from motor vehicle fuel must be used for highway purposes. If the HST more closely resembles the latter, then the legislature can spend the money on any purpose it chooses.

¶11 By contrast, however, our constitutional jurisprudence is grounded in an inquiry into the text's common and ordinary meaning. Nowhere in the text of article II, section 40 does the plain language support AUTO and Tower's proposed reading of the amendment. "It is axiomatic that words in the constitution must be given their common and ordinary meaning." *State ex rel. Albright v. City of Spokane*, 64 Wn.2d 767, 770, 394 P.2d 231 (1964). "Where the words of a constitution are unambiguous and in their commonly received sense lead to a reasonable conclusion, it should be read according to the natural and most obvious import of its framers, without resorting to subtle and forced construction for the purpose of limiting or extending its operation." *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 558, 452 P.2d 943 (1969) (citing *State ex rel. Torreyson v. Grey*, 21 Nev. 378, 32 P. 190 (1893)). "[T]he state constitution is not a grant, but a restriction on the lawmaking power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions." *Clark v. Dwyer*, 56 Wn.2d 425, 431, 353 P.2d 941 (1960). "Where the validity of a statute is assailed, there is a presumption of the constitutionality of the legislative enactment, unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt." *Id.*

¶12 AUTO and Tower want to insert a restriction into our constitutional analysis that does not appear in the text of article II, section 40. Nothing in that constitutional provision indicates that any new tax similar to a gas tax would require the legislature to use the funds for highway

purposes or that a new tax similar to the MVET or B&O tax would allow the contrary. Furthermore, the language of article II, section 40 is unambiguous in its natural and most obvious import because it specifically indicates that all "state revenue intended to be used for highway purposes [shall] be used exclusively for highway purposes." The proviso even clarifies that "this section shall not be construed to include revenue from . . . taxes or excises not levied primarily for highway purposes." WASH. CONST. art. II, § 40. Here, the HST statute was enacted to tax toxic substances, including motor vehicle fuel, for the purpose of cleaning up spills of hazardous substances. As a result, funds from the HST levied against motor vehicle fuel do not have to be used for highway purposes because they were never restricted to be used only for highway purposes.

¶13 AUTO and Tower then argue that the HST provisions of RCW 82.21.030, taxing the "possession of hazardous substances," cannot be construed to evade article II, section 40's mandate that all taxes "on the sale, distribution or use of motor vehicle fuel" must be used for highway purposes. RCW 82.21.030. They properly point out that this court previously interpreted "possession" in the HST statute to mean " 'the power to sell or use a hazardous substance or to authorize the sale or use by another.' " *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 317, 190 P.3d 28 (2008) (quoting RCW 82.21.020(3)). In making this argument, AUTO and Tower are correct that there is no legal distinction between "possession" and "sale, distribution or use" of motor vehicle fuel, but the result of this argument is not outcome determinative. RCW 82.21.030; WASH. CONST. art. II, § 40. Even if the HST is a tax on the "sale, distribution or use" of motor vehicle fuel, funds from the HST levied against motor vehicle fuel are not restricted to use for highway purposes and were never intended to be used for highway purposes. WASH. CONST. art. II, § 40.

¶14 Lastly, AUTO and Tower contend that Idaho and Oregon have interpreted their constitutions to preclude

motor vehicle fuel revenue from being used for anything other than highway purposes. In *V-1 Oil Co. v. Idaho Petroleum Clean Water Trust Fund*, 128 Idaho 890, 892, 894, 920 P.2d 909 (1996), the Idaho Supreme Court invalidated a one cent per gallon transfer fee on motor vehicle fuel as a violation under article VII, section 17 of the Idaho Constitution. The transfer fee was assessed on the first licensed distributor to transfer title of a petroleum product in the state and used to benefit the Idaho Petroleum Clean Water Trust Fund. *Id.* at 892. This fund insured owners of storage tanks from various claims arising from the accidental release of petroleum. *Id.* Article VII, section 17 of the Idaho Constitution provides that "the proceeds from the imposition of any tax on gasoline . . . shall be used exclusively for . . . the public highways of this state."

¶15 In *Automobile Club of Oregon v. Oregon*, 314 Or. 479, 481-82, 495, 840 P.2d 674 (1992), the Supreme Court of Oregon invalidated an underground storage tank assessment fee on motor vehicle fuel and an emission fee on motor vehicles as violations of article IX, section 3a of the Oregon Constitution. These fees were used to fund projects designed to benefit the environment. *Id.* at 481. Article IX, section 3a of the Oregon Constitution provides that all revenue from taxes and excises levied on motor vehicle fuel or motor vehicles "shall be used exclusively for . . . public highways."

¶16 Article II, section 40 of the Washington Constitution has much different language from both the Idaho and Oregon Constitutions. Accordingly, *V-1 Oil* and *Automobile Club* should not be relied upon as persuasive authority in interpreting article II, section 40 of the Washington Constitution. The Idaho and Oregon Constitutions have proscriptive provisions that preclude all proceeds and revenue generated from taxes on gasoline from being used for anything other than public highways. Article II, section 40 of the Washington Constitution provides that all "revenue intended to be used for highway purposes" must be used for

highway purposes. This language is much different from the constitutional language at issue in *V-1 Oil* and *Automobile Club*. As a result, we hold that the HST is constitutional because the common and ordinary meaning of article II, section 40 does not bar the implementation of a new tax for the purpose of cleaning up hazardous substances.

CONCLUSION

¶17 We reverse in part and affirm in part. We reverse the trial court in holding that the doctrines of reasonable time or laches bar the present lawsuit. We affirm the trial court, however, in granting summary judgment to the State because the common and ordinary meaning of article II, section 40 does not preclude the enactment of an additional tax on motor vehicle fuel for hazardous substances cleanup.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.